**Brian Patrick UPCHURCH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–99–00683–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 8, 2000.

Rehearing Overruled June 23, 2000.

Alex G. Azzo, Houston, for appellant.

John B. Holmes, Carmen Castillo Mitchell, Houston, for State.

Panel consists of Justices COHEN, WILSON, and PRICE.[1]

## OPINION

MURRY B. COHEN, Justice.

The jury found appellant guilty of possession with intent to deliver between 4 and 20 grams of methamphetamine, and after he pled true to the enhancement paragraph, it assessed punishment at 30 years in prison. We reverse and remand for a new trial.

1. The Honorable Frank Price, former Justice, Court of Appeals, First District of Texas at

### Facts

In the early hours of December 29, 1998, Houston police officers arrested Max Webb, who told them appellant may have drugs in his car. Surveillance began shortly thereafter on appellant's residence and car. Within 15 minutes, appellant approached, opened the trunk and looked in, closed the trunk, then drove off alone. Police stopped him for running a stop sign.

Police saw a pistol in plain view on the driver's side floorboard. They saw a baggie of powdery substance on the floor behind the driver's seat. There were bullet holes in the car frame behind the driver's seat. Appellant stated he was the largest methamphetamine supplier for west Houston and began negotiating with the officers. He offered to call a contact in Dallas to obtain a pound of methamphetamine. He then told the officers that more drugs were in the trunk.

Appellant signed a consent-to-search form, and more drugs were recovered. The baggie found behind appellant's seat contained 1.8 grams of methamphetamine, and the trunk contained 108.5 grams. Appellant repeated that he was a large supplier and called an associate, Henry Childress, and ordered more methamphetamine. Childress promptly delivered it and was arrested.

Appellant testified he sold drugs for Arnold and Mark Ramos, members of the Mexican Mafia. Appellant testified that, before his arrest, he told Arnold Ramos he no longer wanted to work for him, which angered Ramos because appellant was Ramos's only methamphetamine dealer. Several weeks after the altercation with Arnold Ramos, appellant was shot at while in his car. The bullets struck the car, causing the bullet holes seen by the arresting officers.

Appellant testified that, after the shooting, Mark Ramos gave him the drugs

Houston, participating by assignment.

found in the trunk and told him to sell them. Appellant kept them in his car for the 30 hours before his arrest. Appellant stated that one of his runners, Max Webb, was scheduled to visit that night and that he had intended to decide then whether to give Webb the drugs. Appellant got a "funny feeling," however, and left before the scheduled meeting in order to avoid Webb.

Appellant testified that the drugs recovered by the police from his trunk had not yet been ground into powder form, divided into ounces, or packaged for sale. He also testified that when he was found in possession of the drugs, he did not have intent to sell the drugs.

## Analysis

In the first point of error, appellant contends the trial court erred in denying his request to include an instruction on possession of methamphetamine. He contends he was entitled to an instruction on the lesser included offense of possession because there was some evidence that he did not intend to deliver the drugs that were found in the trunk of his car.

At the close of evidence, defense counsel requested a possession instruction and stated that there was no evidence of appellant's specific intent with regard to what he was going to do with the drugs that were found in his car. Counsel stated further that the evidence indicated that the drugs were not prepared for sale or intended for sale on that particular evening. The trial judge observed that her recollection was that appellant testified on direct that he was eventually going to deliver or transfer the drugs to someone else and that appellant testified on cross that he was going to distribute the drugs to one of his runners. The trial judge denied the request.

█ Before an instruction on a lesser included offense is warranted, a two-pronged test must be satisfied: 1) the lesser included offense must be included within the proof necessary to establish the offense charged and 2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993).

█ Possession is a lesser included offense of possession with intent to deliver; thus, the first prong is satisfied. *See Greer v. State*, 783 S.W.2d 222, 224 (Tex. App.-Dallas 1989, no pet.). The next issue is whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Rousseau*, 855 S.W.2d at 672. As this Court has noted, the issue "is whether *any* evidence exists in the record that would permit a rational jury to find that the defendant is guilty only of the lesser included offense ... anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Jones v. State*, 921 S.W.2d 361, 364 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (emphasis in original). The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Crim.App.1989).

█ Thus, the question is, was there "anything more than a scintilla of evidence" that appellant did not intend to deliver the drugs in the trunk. Appellant admitted having sold large amounts of drugs, but claimed he had tried to stop selling for Arnold Ramos. Weeks before appellant was arrested, he was shot at by two Hispanic males, whose bullets struck his car, an incident he attributed to his attempt to sever ties with Ramos. An arresting officer testified that there were bullet holes in the car frame behind the driver's seat.

Appellant told officers that drugs were in the trunk and consented to a car search. The drugs had not been cut up or packaged for sale. As to why he kept the drugs in his trunk, appellant explained, "I

just kept it in my trunk. I always kept my drugs in my trunk," adding that he felt safer with the drugs there "because if . . . something was to happen, I would have to answer to Arnold and his brother. And you know, he held me fully responsible for everything. No mess ups."

The appellant stated that the drugs had been "dropped off to me" by "Mark [Ramos] and Alex [an employee of the Ramos's]" and estimated the length of time the drugs had been in his trunk at 30 hours. Appellant denied having any intent "at that time" to sell the drugs. On the night in question, Max Webb was scheduled to get the drugs from appellant and sell them for him, but appellant went to his girlfriend's apartment instead. He explained he had "a funny feeling" that left him unsure about whether he would give the drugs to Webb.

It is true that appellant testified at length about the "runners" who had sold drugs for him, how the drugs were customarily packaged for sale, and the typical sales price. This testimony spoke to past activity, which appellant readily admitted. Appellant equivocated, however, when asked about his specific intent to sell the drugs that were in the trunk. Appellant stated that, as for the drugs he had that night, he "planned to give it to whoever, you know, out of them three," alluding to the three runners he had used in the past. Appellant asserts that this testimony must be read in context with his earlier testimony that he had tried to quit selling for the Ramos brothers, had been shot at because of it, and had avoided meeting his drug runner Max Webb because of a "funny feeling," *i.e.*, fear.

Appellant contends the above evidence raises the possibility, however "credible, controverted, or in conflict with other evidence" it may have been, that one of the drug dealers for whom appellant had dealt drugs in the past, Mark Ramos, had foisted drugs upon him as part of an ongoing attempt to coerce appellant into continuing to sell drugs for Ramos. According to

appellant, he told Arnold Ramos he no longer wanted to sell drugs for him, which was followed by appellant's being shot at two weeks prior to the arrest. Appellant depicted the situation as one in which he was trying to free himself from the association with both Arnold and Mark Ramos but was being met with resistance.

It is consistent with this scenario that Mark Ramos would continue to provide drugs to appellant to be sold, even though appellant had told Arnold Ramos he wanted out of the operation. As a result, appellant could have kept the drugs in the trunk while deciding how to disassociate from Arnold and Mark Ramos. The bullet holes in the car, the avoidance of Webb, and the immediate confession and attempt by appellant to help the police—even before being questioned—are also consistent. This evidence is more than a scintilla, and, from it, a rational juror could have concluded that appellant was guilty only of possession, without intent to deliver.

The State, however, points out that appellant overlooks the fact that although he testified he no longer wanted to work for Arnold Ramos, he further testified that Mark Ramos delivered the drugs to the appellant; appellant kept the drugs in his trunk; and appellant planned on selling the drugs to his drug runners.

■ The testimony reflects that Mark Ramos, as well as his brother, Arnold, had fronted appellant drugs in the past and that they were members of the Mexican Mafia. A rational juror might well have concluded that despite appellant's past drug involvement, he was nevertheless arrested at the point when he was unsure whether he would deliver the drugs in the trunk, given his prior altercation with Arnold Ramos, being shot at two weeks earlier by two Hispanic males, and his avoidance of the meeting he had scheduled that night with his runner, Max Webb. It is consistent with this that appellant immediately cooperated with the arresting officers and with the FBI, one of whose agents

testified for appellant at the punishment stage. We are required to view this evidence in the light most favorable to appellant and give him the benefit of reasonable inferences from it, without regard to whether the evidence is credible, controverted, or in conflict with other evidence. *See Rousseau*, 855 S.W.2d at 673; *Havard*, 800 S.W.2d at 216. This evidence conflicts with other evidence, but that is not the test. The evidence above, when considered as a whole and under the controlling standard of review, raises more than a scintilla of evidence that appellant was guilty only of possession and had no intent to deliver. Thus, the appellant was entitled to a lesser charge of possession. *See Jones*, 921 S.W.2d at 364.

Had the lesser included possession instruction been given and appellant been convicted of possession, he would have faced only a second-degree felony, enhanced to a first degree, thereby subjecting him to a punishment range of 5–99 years and a fine not to exceed $10,000 instead of the 15–99 year punishment range. Based on appellant's extraordinary cooperation with the police, we cannot say the jury would have rejected appellant's story that he had no intent to deliver. On these facts, a rational jury might well have convicted appellant only of possession. Thus, appellant suffered "some harm." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

We sustain the first point of error.

The judgment is reversed, and the cause is remanded.