COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-396-CR
 
CEDRIC E. WINGFIELD                                                           APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
------------
 
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION 

 ON
STATE’S PETITION FOR DISCRETIONARY REVIEW
 
------------
INTRODUCTION
        On 
July 17, 2003, we issued an opinion and judgment reversing the trial court’s 
judgment and remanding this case for a new trial. The State has filed a petition 
for discretionary review in the court of criminal appeals. Pursuant to Texas 
Rule of Appellate Procedure 50, we withdraw our prior opinion and judgment and 
substitute the following opinion and accompanying judgment. See Tex. R. App. P. 50.
        Appellant 
Cedric Earl Wingfield appeals from his conviction by a jury for possession with 
intent to deliver four to 200 grams of cocaine. After pleading true to an 
enhancement and a habitual offender notice, the trial court assessed punishment 
at thirty years’ confinement. Appellant raises four points on appeal: (1)-(2) 
the evidence is legally and factually insufficient to support a finding of 
“possession” of the contraband or a finding of “intent to deliver”; (3) 
the trial court erred in refusing to instruct the jury on the lesser-included 
offense of possession of a controlled substance; and (4) the trial court erred 
in refusing to suppress the cocaine because it was obtained by means of an 
illegal arrest or detention. We reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
        Around 
11:40 a.m. on July 21, 2000, Euless police officers noticed Appellant driving a 
vehicle with an expired registration sticker. The police pulled over 
Appellant’s vehicle to conduct a traffic stop. When the officers spoke with 
Appellant, they discovered that he was driving without a driver’s license and 
proof of insurance. Officer David Chaney asked Appellant if he had anything 
illegal in the car, and Appellant responded that he did not and that the 
officers could check for themselves.
        Officer 
Chaney asked Appellant to step to the rear of his vehicle, and after Appellant 
complied, Officer Jermaine Montgomery searched the car for three to five minutes 
and found nothing illegal. While standing with Appellant, Officer Chaney noticed 
a “large bulge“ in Appellant’s left front pants’ pocket, which the 
officer thought might be a small caliber weapon. The officer decided to conduct 
a pat-down search of Appellant and directed him to face the car with his legs 
spread and his hands on top of his head.
        As 
Appellant assumed this position, Officer Chaney noticed a small black film 
canister fall to the ground in front of Appellant’s feet. Chaney patted down 
Appellant, and he discovered that the bulge was a container of Primatene Mist, 
an asthma treatment. Having found no weapons, Officer Chaney then picked up the 
canister, which prompted Appellant to say, “[T]hat’s not mine, that ain’t 
mine.” Inside the canister, Officer Chaney found several clear Ziploc baggies 
containing a tan powdery residue and a razor blade. Most of the substances in 
the baggies were in the form of rocks. The officers arrested Appellant. Testing 
later revealed that the canister contained cocaine weighing between 4.99 and 
5.11 grams.
LESSER–INCLUDED OFFENSE
        In 
his third point, Appellant complains that the trial court erred in failing to 
include within the court’s charge a submission on the lesser-included offense 
of possession of four to 200 grams of a controlled substance. The State argues 
that because there was no evidence from which a jury could have rationally 
concluded that Appellant possessed the cocaine with no intent to deliver it, the 
trial court did not err in refusing to submit an instruction on the 
lesser-included offense. Alternatively, the State contends that Appellant can 
show no actual harm stemming from the trial court’s refusal to submit the 
requested instruction. We agree with Appellant.
        To 
determine whether a jury must be charged on a lesser-included offense, we apply 
a two-step analysis. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 
1998). The first step is to decide whether the offense is a “lesser-included 
offense” as defined in article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 
(Vernon 1981); Moore, 969 S.W.2d at 8. Possession of a controlled 
substance is a lesser-included offense of possession with intent to deliver a 
controlled substance. Hanks v. State, 104 S.W.3d 695, 699-700 (Tex. 
App.—El Paso 2003, pet. filed); Upchurch v. State, 23 S.W.3d 536, 538 
(Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).
        The 
second step requires an evaluation of the evidence to determine whether there is 
some evidence that would permit a rational jury to find that the defendant is 
guilty only of the lesser offense, and not of the greater. Feldman v. State, 
71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Moore, 969 S.W.2d at 8. The 
evidence must be evaluated in the context of the entire record. Moore, 
969 S.W.2d at 8. There must be some evidence from which a rational jury could 
acquit the defendant on the greater offense while convicting him of the 
lesser-included offense. Id. We must consider the evidence in a light 
most favorable to Appellant and give him the benefit of reasonable inferences 
without regard to whether the evidence is credible, controverted, or in conflict 
with other evidence. Id.; Upchurch, 23 S.W.3d at 538; Havard v. 
State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989)). “[T]he issue ‘is 
whether any evidence exists in the record that would permit a rational 
jury to find that the defendant is guilty only of the lesser included offense . 
. . anything more than a scintilla of evidence is sufficient to entitle a 
defendant to a lesser charge.’” Upchurch, 23 S.W.3d at 538 (citations 
omitted).
        According 
to the court of criminal appeals, “[t]here are two ways in which the evidence 
may indicate that a defendant is guilty only of the lesser offense.” Saunders 
v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). First, if there is 
more than a scintilla of evidence from any source that negates or refutes the 
element establishing the greater offense, or second, if the evidence is subject 
to more than one reasonable interpretation regarding the aggravating element and 
one of the interpretations negates or refutes the greater offense, the jury 
should be charged on the lesser-included offense. Schweinle v. State, 915 
S.W.2d 17, 19 (Tex. Crim. App. 1996); Saunders, 840 S.W.2d at 391-92.
        Intent 
to deliver may be proved by circumstantial evidence, including evidence 
surrounding its possession. Rhodes v. State, 913 S.W.2d 242, 251 (Tex. 
App.—Fort Worth 1995), aff’d, 945 S.W.2d 115 (Tex. Crim. App.), cert. 
denied, 522 U.S. 894 (1997). Factors courts have considered include: (1) the 
quantity of drug possessed; (2) the manner of packaging; (3) the presence of a 
large amount of money; (4) the defendant’s status as a drug dealer; (5) the 
presence of drug paraphernalia for either drug use or sale; (6) the presence of 
evidence of drug transactions; and (7) the location at which the defendant is 
arrested. Id. at 251; Williams v. State, 902 S.W.2d 505, 507 (Tex. 
App.—Houston [1st Dist.] 1994, pet. ref’d); Gabriel v. State, 
842 S.W.2d 328, 331-32 (Tex. App.—Dallas 1992), aff’d, 900 S.W.2d 721 
(Tex. Crim. App. 1995).
        The 
State relied primarily on evidence relating to the amount and manner of 
packaging to demonstrate Appellant’s intent to deliver. Max Courtney, who was 
the lab director of Forensic Consultant Services, testified that the substance 
obtained from Appellant was cocaine and weighed between 4.99 and 5.11 grams. 
Courtney had no expertise in the area of packaging for sale or resale of drugs. 
The State offered the testimony of Officer Chaney and undercover Officer Michael 
Webber as evidence of the manner of packaging.
        Officer 
Chaney testified that the cocaine was in the form of powder and rocks and was 
packaged in “several clear plastic Ziploc baggies.” In its brief, the State 
does not point to the specific number of large and small bags found inside the 
canister, but it instead refers to Officer Chaney’s testimony that he found 
“several” baggies. At trial, Officer Chaney testified, without reference to 
any exhibit numbers, about the “package . . . in front of [him],” which 
contained the contraband seized from Appellant. Officer Chaney took four large 
envelopes, placed them in a baggie, and then described the contents as “four 
larger plastic baggies of brown powdery residue.” When asked whether these 
were the same four baggies that he witnessed come out of the film canister, 
Officer Chaney testified that two came out of the canister, and two were 
packaged at the lab with “loose remaining cocaine.” Officer Chaney then took 
four smaller baggies and placed them into a baggie. He testified that those were 
the same four baggies he remembered seeing while on the side of the road. 
Officer Chaney then placed a piece of loose material into a third large baggie 
and the film canister into another baggie. We note that the evidence envelope 
signed by Officers Chaney and Montgomery identified the contents of the film 
canister as “6 Zip lock [sic] baggies of tan powdery residue-cocaine as well 
as a small amount of rock cocaine.” 


        Officer 
Chaney also testified that a razor blade was found along with the cocaine. When 
asked whether the amount of cocaine constituted a usable quantity or an amount 
for sale or distribution, Officer Webber testified that “it does constitute an 
amount for sale or distribution”–a “dealer amount.” Officer Webber 
testified that one of the pieces of rock cocaine was a dealer amount because it 
was of such size that it would need to be cut several times to fit inside a 
pipe. From this testimony, however, the jury could have rationally inferred that 
the larger piece was for personal use because it had in fact not yet been cut up 
and packaged for sale; therefore, Appellant could have bought enough cocaine to 
supply himself beyond one use. See Upchurch, 23 S.W.3d at 538-39. 
Additionally, as Appellant points out, there was no testimony regarding whether 
it was more likely that the razor blade found by Officer Chaney would be used 
for purposes of personal use or dealing.
        Officer 
Webber testified that “[e]ach of the independent bags [in State’s Exhibit 3] 
could contain 10 -- what would be priced $10 or $20 rocks,” and he later 
opined on cross-examination that “[t]his . . . cocaine is packaged for 
distribution.” Appellant, however, directs us to Officer Webber’s testimony 
that a person could buy cocaine in the same form that he or she might distribute 
it. In other words, Officer Webber acknowledged that a person might possess 
cocaine packaged in the same manner as when it was sold to him or her. Officer 
Webber testified that when a person gets cocaine for personal use, depending on 
whom it was purchased from, “[i]t could come wrapped in a baggie, [or] it 
could come unpackaged.” When Appellant’s counsel asked Officer Webber how he 
could determine “whether it’s packaged for distribution or whether it has 
already been distributed,” Officer Webber replied, “Well, it very well could 
be both.” Thus, from Officer Webber’s testimony, the jury could have 
rationally inferred that Appellant did not intend to deliver the drugs, but 
rather that he purchased the drugs for his personal use and that the drugs 
remained packaged as they were at the time Appellant acquired them. See 
Upchurch, 23 S.W.3d at 538-39.
        According 
to Officer Webber, the price of cocaine varies depending on the area of town. 
Officer Webber testified that he was only familiar with Arlington and not 
Euless—where Appellant was arrested—but he stated that the rocks were 
usually sold for either ten or twenty dollars. Officer Webber calculated that 
5.11 grams of cocaine could have been sold for a maximum of $511. Further, 
Officer Webber testified that a person might consume .6 grams of cocaine in a 
day, which the State points out is eight to nine times below the level found on 
Appellant. Officer Webber testified that a high from a twenty–dollar rock 
usually lasts four to five hours.
        With 
respect to the other factors, the State offered no evidence that a large amount 
of money was found in the search of Appellant and his car. Officer Chaney 
testified that he could not recall how much money, if any, was found on 
Appellant at the time of his arrest. Officer Chaney did not make an inventory 
sheet. Additionally, the State offered no evidence concerning Appellant’s 
status as a drug dealer. In fact, the offense the State relied upon in the 
habitual offender enhancement paragraph was the felony offense of possession of 
cocaine in 1993.
        The 
only evidence of drug paraphernalia for either drug use or sale was the razor 
blade, which either a dealer could use to cut for multiple sales or a user could 
utilize for multiple personal uses. No weapons were found on Appellant or in the 
search of his car. Additionally, the State offered no evidence of other drug 
transactions, and Appellant was arrested on the side of the road where he was 
pulled over. Cf. Castillo v. State, 867 S.W.2d 817, 821 (Tex. 
App.—Dallas 1993) (stating that “[a]nother factor showing intent to deliver 
is the presence of the accused in a trap or crack house.”), vacated on 
other grounds, 913 S.W.2d 529 (Tex. Crim. App. 1995). Further, this case is 
unlike Hanks, in which the State offered the expert testimony of a police 
officer that evidence of a digital scale, packaging materials, a razor, money, 
and 46.2 grams of cocaine showed that the defendant possessed the drugs with an 
intent to deliver. 104 S.W.3d at 698.
        The 
second prong of the analysis concerning instructions for lesser-included 
offenses “preserves the integrity of the jury as the fact finder by ensuring 
that the jury is instructed as to a lesser–included offense only when that 
offense constitutes a valid, rational alternative to the charged offense.” Arevalo 
v. State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997). Officer Webber’s 
testimony is “some evidence directly germane to the lesser-included offense” 
of possession. Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 
2003). Based on all of the circumstantial evidence presented by the State, we 
conclude that the evidence is subject to more than one reasonable interpretation 
regarding the intent-to-deliver element and that possession was a valid, 
rational alternative; therefore, Appellant was entitled to a lesser charge of 
possession. See Schweinle, 915 S.W.2d at 20; Saunders, 840 S.W.2d 
at 391-92; Upchurch, 23 S.W.3d at 540 (holding appellant was entitled to 
lesser charge of possession); Valdez v. State, 993 S.W.2d 340, 344-45 
(Tex. App.—El Paso 1999, pet. ref’d) (holding that “a reasonable 
interpretation of the evidence could have eliminated one of the crucial elements 
of the greater offense” and thus warranted an instruction on a lesser-included 
offense); see also Stadt v. State, No. 14-01-01272-CR, slip op. at 13-14, 
2003 WL 21402566, at *8 (Tex. App.—Houston [14th Dist.] June 19, 
2003, no pet. h.) (holding jury was properly instructed on lesser-included 
offense because there was more than a scintilla of evidence from which a 
rational jury could infer that appellant was guilty of either manslaughter or 
criminally negligent homicide); but see Hanks, 104 S.W.3d at 700 (holding 
the trial court did not err in refusing to give an instruction on lesser charge 
of possession); Valencia v. State, 51 S.W.3d 418, 423-24 (Tex. 
App.—Houston [1st Dist.] 2001, pet. ref’d) (distinguishing Upchurch 
on the facts and holding appellant not entitled to instruction on lesser charge 
of possession).
        Because 
we have determined that the trial court erred in denying Appellant’s requested 
instruction, we must conduct a harm analysis. See Tex. Code Crim. Proc. Ann. art. 36.19 
(Vernon Supp. 2003); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. 
App. 1985) (op. on reh’g). Error in the charge, 
if timely objected to in the trial court, requires reversal if the error was 
“calculated to injure [the] rights of the defendant,” which means no more 
than that there must be some harm to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19; see 
also Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994); Almanza, 
686 S.W.2d at 171. In other words, a properly preserved error will call for 
reversal as long as the error is not harmless. Almanza, 686 S.W.2d at 
171. In making this determination, “the actual degree of harm must be assayed 
in light of the entire jury charge, the state of the evidence, including the 
contested issues and weight of probative evidence, the argument of counsel and 
any other relevant information revealed by the record of the trial as a 
whole.” Id.; see also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. 
Crim. App. 2000).
        If 
the absence of the lesser-included offense instruction left the jury with the 
sole option either to convict the defendant of the charged offense or to acquit 
him, the jury is denied the opportunity to convict the defendant of the lesser 
offense. Saunders v. State, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995). 
 

 In 
 cases such as this, there is a distinct possibility that the jury, believing 
 the defendant to have committed some crime, but given only the option to 
 convict him of the greater offense, may have chosen to find him guilty of that 
 greater offense, rather than to acquit him altogether, even though it had a 
 reasonable doubt that he committed the greater offense. Id. (citing Beck 
 v. Alabama, 447 U.S. 625, 634, 100 S. Ct. 2382, 2388 (1980)).
        Here, 
the jury had only two options: find Appellant guilty of possession with intent 
to deliver or acquit him. 

 The 
 State points out that Appellant’s punishment range would be twenty–five to 
 ninety–nine years, regardless of the intent to deliver element because 
 possession of four to 200 grams of cocaine constitutes a second degree felony, 
 and the range would increase due to Appellant’s habitual offender status. See 
 Tex. Penal Code Ann. § 12.42(d) 
 (Vernon 2003); Tex. Health & Safety 
 Code Ann. § 481.115(d) (Vernon 2003). We note, however, that the State 
 argued to the court at punishment that Appellant had ”progressed” from 
 possessing to dealing. The trial court gave Appellant five years more than the 
 minimum sentence. It is impossible to say whether the conviction for the 
 greater offense may have had an impact on Appellant’s sentence under the 
 circumstances. Because a jury could have rationally found Appellant guilty of 
 the lesser offense of possession based on the evidence, Appellant suffered harm 
 when the trial court denied his request for an instruction on the 
 lesser-included offense. See Upchurch, 23 S.W.3d at 540. We 
 sustain Appellant’s third point.
ADMISSIBILITY OF THE COCAINE
        In 
his fourth point, Appellant contends that the trial court erred in overruling 
his objection to the introduction of the contraband in this case on the basis 
that it was obtained by means of an illegal arrest or detention. 

 Appellant 
 specifically complains of the film canister and the controlled substance found 
 therein, which were introduced as State’s Exhibits One through Four. 
 

 Because 
 this matter is likely to arise in a new trial, we will address it.
        We 
use an abuse of discretion standard when reviewing the trial court’s decision 
to admit evidence. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 
2002); Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); see 
also Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (“We 
review a trial court’s ruling on a motion to suppress evidence for an abuse of 
discretion.”). There is an abuse of discretion when the ruling was so clearly 
wrong as to be outside that zone within which reasonable persons might disagree. 
Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), cert. 
denied, 509 U.S. 926 (1993). We afford almost total deference to a trial 
court’s determination of the historical facts that the record supports, 
especially when the trial court’s fact findings are based upon an evaluation 
of credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. 
Crim. App. 2000). We afford the same amount of deference to the trial court’s 
rulings on mixed questions of law and fact if the resolution of those questions 
turns on an evaluation of credibility and demeanor. Carmouche v. State, 
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 
85, 88-89 (Tex. Crim. App. 1997). We review de novo the trial court’s 
application of law to those facts in the determination of reasonable suspicion 
and probable cause. Carmouche, 10 S.W.3d at 327-28; Guzman, 955 
S.W.2d at 88-89.
        The 
Fourth Amendment does not protect those who voluntarily abandon property. Abel 
v. United States, 362 U.S. 217, 241, 80 S. Ct. 683, 698 (1960); Hester v. 
United States, 265 U.S. 57, 58, 44 S. Ct. 445, 446 (1924); Morrison v. 
State, 71 S.W.3d 821, 829 (Tex. App.—Corpus Christi 2002, no pet.). 
Voluntary abandonment occurs if (1) the defendant intended to abandon property, 
and (2) the decision to abandon the property was not induced by police 
misconduct. Brimage v. State, 918 S.W.2d 466, 507 (Tex. Crim. App. 1994), 
cert. denied, 519 U.S. 838 (1996); Morrison, 71 S.W.3d at 829.
        To 
determine whether an object has been abandoned, we look at the actor’s intent, 
which may be inferred from words spoken, acts done, and other objective facts. Morrison, 
71 S.W.3d at 829. In this case, Appellant dropped the film canister on the 
roadside of a public street and affirmatively declared, “[T]hat’s not mine, 
that ain’t mine.” As such, the trial court did not abuse its discretion in 
concluding that Appellant intended to abandon the property. See id.
        We 
now turn to whether Appellant’s decision to abandon the film canister was the 
result of police misconduct. Appellant claims that the evidence was illegally 
seized because the officers improperly stopped his vehicle and unlawfully 
searched his car and person. We disagree.
        The 
evidence regarding the traffic stop and the subsequent searches are provided 
solely by the testimony of the police officers because the video camera mounted 
on the police vehicle was not functioning that day, according to Officer Chaney. 
The record is clear that the initial traffic stop of Appellant was legally 
justified based on the undisputed fact that Appellant was driving a car with an 
expired registration sticker. See McVickers v. State, 874 S.W.2d 662, 664 
(Tex. Crim. App. 1993) (“[A]n officer may lawfully stop and detain a person 
for a traffic violation.”); Rubeck v. State, 61 S.W.3d 741, 745 n.14 
(Tex. App.—Fort Worth 2001, no pet.) (op. on reh’g) (same). The officers 
also discovered that Appellant had been driving without a driver’s license and 
without insurance, which would have given rise to probable cause to arrest 
Appellant. See, e.g., Mays v. State, 726 S.W.2d 937, 944 (Tex. Crim. App. 
1986), cert. denied, 484 U.S. 1079 (1988).
        In 
response to whether he had anything illegal in the car, Appellant responded that 
he did not and volunteered, without request from either officer, his consent for 
the officers to search his car. See, e.g., Davis v. United States, 328 
U.S. 582, 593, 66 S. Ct. 1256, 1261 (1946); Reasor v. State, 12 S.W.3d 
813, 817 (Tex. Crim. App. 2000). A search made after voluntary consent is not 
unreasonable. See Reasor, 12 S.W.3d at 818. Moreover, it was not 
unreasonable for Officer Chaney to ask Appellant to step out of his car while 
Officer Montgomery searched it. Further, Officer Chaney’s pat-down of 
Appellant was lawful in light of the officer’s testimony that he noticed the 
bulge in Appellant’s pocket that could have been a small caliber handgun. See 
Roy v. State, 90 S.W.3d 720, 723 (Tex. Crim. App. 2002) (“A state official 
who detains a person briefly for investigation may conduct a limited pat-down 
search of that person if the official has a reasonable belief that the person 
detained poses a threat to the official’s safety or the safety of others.”) 
(citing Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)).
        Appellant 
abandoned the canister during the pat-down. Appellant’s decision to abandon 
the property also was not due to police misconduct. Because Appellant’s Fourth 
Amendment rights were in no way violated, we hold the trial court did not abuse 
its discretion by overruling Appellant’s objection to the admission of the 
cocaine and film canister, which Appellant had possessed and then abandoned. 
Accordingly, we overrule Appellant’s fourth point. 


CONCLUSION
        Having 
sustained Appellant’s third point, we reverse the judgment of the trial court 
and remand this case for a new trial.
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
PANEL 
B:   LIVINGSTON, GARDNER, and WALKER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 
47.2(b)
 
DELIVERED: September 15, 2003