WINGFIELD V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-01-396-CR

CEDRIC E. WINGFIELD APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON 

STATE’S PETITION FOR DISCRETIONARY REVIEW

------------

INTRODUCTION

On July 17, 2003, we issued an opinion and judgment reversing the trial court’s judgment and remanding this case for a new trial.  The State has filed a petition for discretionary review in the court of criminal appeals.  Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our prior opinion and judgment and substitute the following opinion and accompanying judgment.  
See
 
Tex. R. App. P.
 50.

Appellant Cedric Earl Wingfield appeals from his conviction by a jury for possession with intent to deliver four to 200 grams of cocaine.  After pleading true to an enhancement and a habitual offender notice, the trial court assessed punishment at thirty years’ confinement.  Appellant raises four points on appeal: (1)-(2) the evidence is legally and factually insufficient to support a finding of “possession” of the contraband or a finding of “intent to deliver”; (3) the trial court erred in refusing to instruct the jury on the lesser-included offense of possession of a controlled substance; and (4) the trial court erred in refusing to suppress the cocaine because it was obtained by means of an illegal arrest or detention.  We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

Around 11:40 a.m. on July 21, 2000, Euless police officers noticed Appellant driving a vehicle with an expired registration sticker.  The police pulled over Appellant’s vehicle to conduct a traffic stop.  When the officers spoke with Appellant, they discovered that he was driving without a driver’s license and proof of insurance.  Officer David Chaney asked Appellant if he had anything illegal in the car, and Appellant responded that he did not and that the officers could check for themselves.  

Officer Chaney asked Appellant to step to the rear of his vehicle, and after Appellant complied, Officer Jermaine Montgomery searched the car for three to five minutes and found nothing illegal.  While standing with Appellant, Officer Chaney noticed a “large bulge“ in Appellant’s left front pants’ pocket, which the officer thought might be a small caliber weapon.  The officer decided to conduct a pat-down search of Appellant and directed him to face the car with his legs spread and his hands on top of his head.   

As Appellant assumed this position, Officer Chaney noticed a small black film canister fall to the ground in front of Appellant’s feet.  Chaney patted down Appellant, and he discovered that the bulge was a container of Primatene Mist, an asthma treatment.  Having found no weapons, Officer Chaney then picked up the canister, which prompted Appellant to say, “[T]hat’s not mine, that ain’t mine.”  Inside the canister, Officer Chaney found several clear Ziploc baggies containing a tan powdery residue and a razor blade.  Most of the substances in the baggies were in the form of rocks.  The officers arrested Appellant.  Testing later revealed that the canister contained cocaine weighing between 4.99 and 5.11 grams. 

LESSER–INCLUDED OFFENSE

In his third point, Appellant complains that the trial court erred in failing to include within the court’s charge a submission on the lesser-included offense of possession of four to 200 grams of a controlled substance.  The State argues that because there was no evidence from which a jury could have rationally concluded that Appellant possessed the cocaine with no intent to deliver it, the trial court did not err in refusing to submit an instruction on the lesser-included offense.  Alternatively, the State contends that Appellant can show no actual harm stemming from the trial court’s refusal to submit the requested instruction.  We agree with Appellant.

To determine whether a jury must be charged on a lesser-included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser-included offense” as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.  Possession of a controlled substance is a lesser-included offense of possession with intent to deliver a controlled substance.  
Hanks v. State
, 104 S.W.3d 695, 699-700 (Tex. App.—El Paso 2003, pet. filed); 
Upchurch v. State
, 23 S.W.3d 536, 538 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. ref’d).

The second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater. 
 Feldman v. State
, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002);
 Moore
, 969 S.W.2d at 8. The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant on the greater offense while convicting him of the lesser-included offense.  
Id.  
We must consider the evidence in a light most favorable to Appellant and give him the benefit of reasonable inferences without regard to whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
;
 Upchurch
, 23 S.W.3d at 538; 
Havard v. State
, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989)). “[T]he issue ‘is whether 
any
 evidence exists in the record that would permit a rational jury to find that the defendant is guilty only of the lesser included offense . . . anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.’”  
Upchurch
, 23 S.W.3d at 538 (citations omitted).

According to the court of criminal appeals, “[t]here are two ways in which the evidence may indicate that a defendant is guilty only of the lesser offense.”  
Saunders v. State
, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).  First, if there is more than a scintilla of evidence from any source that negates or refutes the element establishing the greater offense, or second, if the evidence is subject to more than one reasonable interpretation regarding the aggravating element and one of the interpretations negates or refutes the greater offense, the jury should be charged on the lesser-included offense. 
 Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders
, 840 S.W.2d at 391-92.

Intent to deliver may be proved by circumstantial evidence, including evidence surrounding its possession.
  Rhodes v. State
, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), 
aff’d
, 945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997).  Factors courts have considered include:  (1) the quantity of drug possessed; (2) the manner of packaging; (3) the presence of a large amount of money; (4) the defendant’s status as a drug dealer; (5) the presence of drug paraphernalia for either drug use or sale; (6) the presence of evidence of drug transactions; and (7) the location at which the defendant is arrested.  
Id
. at 251; 
Williams v. State
, 902 S.W.2d 505, 507 (Tex. App.—Houston [1
st
 Dist.] 1994, pet. ref’d); 
Gabriel v. State
, 842 S.W.2d 328, 331-32 (Tex. App.—Dallas 1992), 
aff’d
, 900 S.W.2d 721 (Tex. Crim. App. 1995).

The State relied primarily on evidence relating to the amount and manner of packaging to demonstrate Appellant’s intent to deliver.  Max Courtney, who was the lab director of Forensic Consultant Services, testified that the substance obtained from Appellant was cocaine and weighed between 4.99 and 5.11 grams.  Courtney had no expertise in the area of packaging for sale or resale of drugs.  The State offered the testimony of Officer Chaney and undercover Officer Michael Webber as evidence of the manner of packaging. 

Officer Chaney testified that the cocaine was in the form of powder and rocks and was packaged in “several clear plastic Ziploc baggies.”  In its brief, the State does not point to the specific number of large and small bags found inside the canister, but it instead refers to Officer Chaney’s testimony that he found “several” baggies.  At trial, Officer Chaney testified, without reference to any exhibit numbers, about the “package . . . in front of [him],” which contained the contraband seized from Appellant.  Officer Chaney took four large envelopes, placed them in a baggie, and then described the contents as “four larger plastic baggies of brown powdery residue.”  When asked whether these were the same four baggies that he witnessed come out of the film canister, Officer Chaney testified that two came out of the canister, and two were packaged at the lab with “loose remaining cocaine.”  Officer Chaney then took four smaller baggies and placed them into a baggie.  He testified that those were the same four baggies he remembered seeing while on the side of the road.  Officer Chaney then placed a piece of loose material into a third large baggie and the film canister into another baggie.  We note that the evidence envelope signed by Officers Chaney and Montgomery identified the contents of the film canister as “6 Zip lock [sic] baggies of tan powdery residue-cocaine as well as a small amount of rock cocaine.”
(footnote: 2) 

Officer Chaney also testified that a razor blade was found along with the cocaine.  When asked whether the amount of cocaine constituted a usable quantity or an amount for sale or distribution, Officer Webber testified that “it does constitute an amount for sale or distribution”–a “dealer amount.”  Officer Webber testified that one of the pieces of rock cocaine was a dealer amount because it was of such size that it would need to be cut several times to fit inside a pipe.  From this testimony, however, the jury could have rationally inferred that the larger piece was for personal use because it had in fact not yet been cut up and packaged for sale; therefore, Appellant could have bought enough cocaine to supply himself beyond one use.  
See Upchurch
, 23 S.W.3d at 538-39.  Additionally, as Appellant points out, there was no testimony regarding whether it was more likely that the razor blade found by Officer Chaney would be used for purposes of personal use or dealing. 

Officer Webber testified that “[e]ach of the independent bags [in State’s Exhibit 3] could contain 10 -- what would be priced $10 or $20 rocks,” and he later opined on cross-examination that “[t]his . . . cocaine is packaged for distribution.”  Appellant, however, directs us to Officer Webber’s testimony that a person could buy cocaine in the same form that he or she might distribute it.  In other words, Officer Webber acknowledged that a person might possess cocaine packaged in the same manner as when it was sold to him or her.  Officer Webber testified that when a person gets cocaine for personal use, depending on whom it was purchased from, “[i]t could come wrapped in a baggie, [or] it could come unpackaged.”  When Appellant’s counsel asked Officer Webber how he could determine “whether it’s packaged for distribution or whether it has already been distributed,” Officer Webber replied, “Well, it very well could be both.”  Thus, from Officer Webber’s testimony, the jury could have rationally inferred that Appellant did not intend to deliver the drugs, but rather that he purchased the drugs for his personal use and that the drugs remained packaged as they were at the time Appellant acquired them.  
See Upchurch
, 23 S.W.3d at 538-39.

According to Officer Webber, the price of cocaine varies depending on the area of town.  Officer Webber testified that he was only familiar with Arlington and not Euless—where Appellant was arrested—but he stated that the rocks were usually sold for either ten or twenty dollars.  Officer Webber calculated that 5.11 grams of cocaine could have been sold for a maximum of $511.  Further, Officer Webber testified that a person might consume .6 grams of cocaine in a day, which the State points out is eight to nine times below the level found on Appellant.  Officer Webber testified that a high from a twenty–dollar rock usually lasts four to five hours. 

With respect to the other factors, the State offered no evidence that a large amount of money was found in the search of Appellant and his car.  Officer Chaney testified that he could not recall how much money, if any, was found on Appellant at the time of his arrest.  Officer Chaney did not make an inventory sheet.  Additionally, the State offered no evidence concerning Appellant’s status as a drug dealer.  In fact, the offense the State relied upon in the habitual offender enhancement paragraph was the felony offense of possession of cocaine in 1993. 

The only evidence of drug paraphernalia for either drug use or sale was the razor blade, which either a dealer could use to cut for multiple sales or a user could utilize for multiple personal uses.  No weapons were found on Appellant or in the search of his car.  Additionally, the State offered no evidence of other drug transactions, and Appellant was arrested on the side of the road where he was pulled over.  
Cf. Castillo v. State
, 867 S.W.2d 817, 821 (Tex. App.—Dallas 1993) (stating that “[a]nother factor showing intent to deliver is the presence of the accused in a trap or crack house.”), 
vacated on other grounds
, 913 S.W.2d 529 (Tex. Crim. App. 1995).  Further, this case is unlike 
Hanks
, in which the State offered the expert testimony of a police officer that evidence of a digital scale, packaging materials, a razor, money, and 46.2 grams of cocaine showed that the defendant possessed the drugs with an intent to deliver.  
104 S.W.3d at 698.

The second prong of the analysis concerning instructions for lesser-included offenses “preserves the integrity of the jury as the fact finder by ensuring that the jury is instructed as to a lesser–included offense only when that offense constitutes a valid, rational alternative to the charged offense.”  
Arevalo v. State
, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997).  Officer Webber’s testimony is “some evidence directly germane to the lesser-included offense” of possession.  
Hampton v. State
, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).  Based on all of the circumstantial evidence presented by the State, we conclude that the evidence is subject to more than one reasonable interpretation regarding the intent-to-deliver element and that possession was a valid, rational alternative; therefore, Appellant was entitled to a lesser charge of possession. 
 See Schweinle
, 915 S.W.2d at 20; 
Saunders
, 840 S.W.2d at 391-92; 
Upchurch
, 23 S.W.3d at 540 (holding appellant was entitled to lesser charge of possession); 
Valdez v. State
, 993 S.W.2d 340, 344-45 (Tex. App.—El Paso 1999, pet. ref’d) (holding that “a reasonable interpretation of the evidence could have eliminated one of the crucial elements of the greater offense” and thus warranted an instruction on a lesser-included offense); 
see also Stadt v. State
, No. 14-01-01272-CR, slip op. at 13-14, 2003 WL 21402566, at *8 (Tex. App.—Houston [14
th
 Dist.] June 19, 2003, no pet. h.) (holding jury was properly instructed on lesser-included offense because there was more than a scintilla of evidence from which a rational jury could infer that appellant was guilty of either manslaughter or criminally negligent homicide); 
but see Hanks
, 104 S.W.3d at 700 (holding the trial court did not err in refusing to give an instruction on lesser charge of possession); 
Valencia v. State
, 51 S.W.3d 418, 423-24 (Tex. App.—Houston [1
st
 Dist.] 2001, pet. ref’d) (distinguishing 
Upchurch
 on the facts and holding appellant not entitled to instruction on lesser charge of possession).

Because we have determined that the trial court erred in denying Appellant’s requested instruction, we must conduct a harm analysis.  
See
 Tex. Code Crim. Proc. Ann.
 art. 36.19 (Vernon Supp. 2003);
 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  
Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure [the] rights of the defendant,” which means no more than that there must be 
some
 harm to the accused from the error.  
Tex. Code Crim. Proc. Ann
. art. 36.19; 
see also Abdnor v. State
, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994); 
Almanza
, 686 S.W.2d at 171.  In other words, a properly preserved error will call for reversal as long as the error is not harmless.  
Almanza
, 686 S.W.2d at 171.  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Id.
; 
see also Ovalle v. State
, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

If the absence of the lesser-included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, the jury is denied the opportunity to convict the defendant of the lesser offense.  
Saunders v. State
, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).
(footnote: 3)  In cases such as this, there is a distinct possibility that the jury, believing the defendant to have committed some crime, but given only the option to convict him of the greater offense, may have chosen to find him guilty of that greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he committed the greater offense.  
Id
. (citing 
Beck v. Alabama
, 447 U.S. 625, 634, 100 S. Ct. 2382, 2388 (1980)).

Here, the jury had only two options:  find Appellant guilty of possession with intent to deliver or acquit him.
(footnote: 4)  The State points out that Appellant’s punishment range would be twenty–five to ninety–nine years, regardless of the intent to deliver element because possession of four to 200 grams of cocaine constitutes a second degree felony, and the range would increase due to Appellant’s habitual offender status.  
See
 
Tex. Penal Code Ann.
 § 12.42(d) (Vernon 2003)
; Tex. Health & Safety Code Ann. 
§ 481.115(d) (Vernon 2003).  We note, however, that the State argued to the court at punishment that Appellant had ”progressed” from possessing to dealing.  The trial court gave Appellant five years more than the minimum sentence.  It is impossible to say whether the conviction for the greater offense may have had an impact on Appellant’s sentence under the circumstances.  Because a jury could have rationally found Appellant guilty of the lesser offense of possession based on the evidence, Appellant suffered harm when the trial court denied his request for an instruction on the lesser-included offense.  
See
 
Upchurch
, 23 S.W.3d at 540.  We sustain Appellant’s third point.

ADMISSIBILITY OF THE COCAINE

In his fourth point, Appellant contends that the trial court erred in overruling his objection to the introduction of the contraband in this case on the basis that it was obtained by means of an illegal arrest or detention.
(footnote: 5)  Appellant specifically complains of the film canister and the controlled substance found therein, which were introduced as State’s Exhibits One through Four.
(footnote: 6)  Because this matter is likely to arise in a new trial, we will address it.

We use an abuse of discretion standard when reviewing the trial court’s decision to admit evidence.  
Torres v. State
, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); 
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
see also Balentine v. State
, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (“We review a trial court’s ruling on a motion to suppress evidence for an abuse of discretion.”).  There is an abuse of discretion when the ruling was so clearly wrong as to be outside that zone within which reasonable persons might disagree.  
Cantu v. State
, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 926 (1993).  We afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based upon an evaluation of credibility and demeanor.  
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same amount of deference to the trial court’s rulings on mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997).  We review de novo the trial court’s application of law to those facts in the determination of reasonable suspicion and probable cause.  
Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 88-89.

The Fourth Amendment does not protect those who voluntarily abandon property.  
Abel v. United States
, 362 U.S. 217, 241, 80 S. Ct. 683, 698 (1960); 
Hester v. United States
, 265 U.S. 57, 58, 44 S. Ct. 445, 446 (1924); 
Morrison v. State
, 71 S.W.3d 821, 829 (Tex. App.—Corpus Christi 2002, no pet.).  Voluntary abandonment occurs if (1) the defendant intended to abandon property, and (2) the decision to abandon the property was not induced by police misconduct.  
Brimage v. State
, 918 S.W.2d 466, 507 (Tex. Crim. App. 1994), 
cert. denied
, 519 U.S. 838 (1996); 
Morrison
, 71 S.W.3d at 829.

To determine whether an object has been abandoned, we look at the actor’s intent, which may be inferred from words spoken, acts done, and other objective facts.  
Morrison
, 71 S.W.3d at 829.  In this case, Appellant dropped the film canister on the roadside of a public street and affirmatively declared, “[T]hat’s not mine, that ain’t mine.”  As such, the trial court did not abuse its discretion in concluding that Appellant intended to abandon the property.  
See id
.

We now turn to whether Appellant’s decision to abandon the film canister was the result of police misconduct.  Appellant claims that the evidence was illegally seized because the officers improperly stopped his vehicle and unlawfully searched his car and person.  We disagree.

The evidence regarding the traffic stop and the subsequent searches are provided solely by the testimony of the police officers because the video camera mounted on the police vehicle was not functioning that day, according to Officer Chaney.  The record is clear that the initial traffic stop of Appellant was legally justified based on the undisputed fact that Appellant was driving a car with an expired registration sticker.  
See McVickers v. State
, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (“[A]n officer may lawfully stop and detain a person for a traffic violation.”); 
Rubeck v. State
, 61 S.W.3d 741, 745 n.14 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh’g) (same).  The officers also discovered that Appellant had been driving without a driver’s license and without insurance, which would have given rise to probable cause to arrest Appellant.  
See, e.g., Mays v. State
, 726 S.W.2d 937, 944 (Tex. Crim. App. 1986), 
cert. denied
, 484 U.S. 1079 (1988). 

In response to whether he had anything illegal in the car, Appellant responded that he did not and volunteered, without  request from either officer, his consent for the officers to search his car.  
See, e.g., Davis v. United States
, 328 U.S. 582, 593, 66 S. Ct. 1256, 1261 (1946); 
Reasor v. State
, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  A search made after voluntary consent is not unreasonable.  
See
 
Reasor
, 12 S.W.3d at 818.  Moreover, it was not unreasonable for Officer Chaney to ask Appellant to step out of his car while Officer Montgomery searched it.  Further, Officer Chaney’s pat-down of Appellant was lawful in light of the officer’s testimony that he noticed the bulge in Appellant’s pocket that could have been a small caliber handgun.  
See Roy v. State
, 90 S.W.3d 720, 723 (Tex. Crim. App. 2002) (“A state official who detains a person briefly for investigation may conduct a limited pat-down search of that person if the official has a reasonable belief that the person detained poses a threat to the official’s safety or the safety of others.”) (citing 
Terry v. Ohio
, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)).  

Appellant abandoned the canister during the pat-down.  Appellant’s decision to abandon the property also was not due to police misconduct.  Because Appellant’s Fourth Amendment rights were in no way violated, we hold the trial court did not abuse its discretion by overruling Appellant’s objection to the admission of the cocaine and film canister, which Appellant had possessed and then abandoned.  Accordingly, we overrule Appellant’s fourth point.
(footnote: 7)
CONCLUSION

Having sustained Appellant’s third point, we reverse the judgment of the trial court and remand this case for a new trial.

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  September 15, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Thus, two of the other large baggies were packaged at the lab, and a third large baggie contained loose material that leaked from one of the baggies found in the canister and was repackaged by Officer Chaney.  
Appellant also points out that Courtney testified that when he received the cocaine for testing, the arresting officers described the contents as a “small amount of rock cocaine.”  

3:
Our sister courts, when faced with this dilemma, have followed 
Saunders
 and stated that a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense.  
Nash v. State
, No. 06-01-00191-CR, slip op. at 5, 2003 WL 21788865, at *2 (Tex. App.—Texarkana Aug. 5, 2003, no pet. h.); 
Schroeder v. State
, No. 13-01-333-CR, 2003 WL 345331, at *5 (Tex. App.—Corpus Christi Feb. 13, 2003, pet. granted); 
Levan v. State
, 93 S.W.3d 581, 585-86 (Tex. App.—Eastland 2002, pet. ref’d); 
O’Brien v. State
, 89 S.W.3d 753, 756 (Tex. App.—Houston [1
st
 Dist.] 2002, pet. ref’d); 
Otting v. State
, 8 S.W.3d 681, 688 (Tex. App.—Austin 1999, pet. ref’d untimely filed); 
see also Pipkin v. State
, No. 14-98-00968-CR, 2001 WL 812356, at *2 (Tex. App.—Houston [14
th
 Dist.] July 19, 2001, no pet.) (not designated for publication).

4:
We note that the jury sent four notes requesting portions or all of Officer Webber’s testimony concerning the amount of drugs and manner of packaging.  The first jury note states, “We want transcripts of Officer Webber’s testimony related to the amount/packaging and typical packaging/use of cocaine; for both dealers & users while testifying under State and defense questioning.”  In response, the trial court instructed the jury on how to present a proper jury note and, specifically, to identify the point of testimony upon which there is a disagreement. 

The second jury note states, “We disagree about whether or not the Officer, Webber, testified that the larger ‘rocks’ of cocaine were something that could/would typically be found by police in the possession of a person for ‘personal use.’  Statement was made during his questioning about quantities & their use.  (Possibly during questioning by defense.)”  In response, the court provided the following testimony from Officer Webber:

DIRECT EXAMINATION

[State]:

. . . .

Q.  Let me show you in State’s Exhibit No. 2, exhibit -- this exhibit, can you tell the jury whether or not that is going to be a usable amount or -- 

A.  This would be an amount that would ultimately be for sale.

Q.  Why would you categorize that as such?

A.  The size of this peace [sic] of substance is not the typical size of the piece of substance that you would use to ingest crack cocaine.

. . . . 

Q.  And the exhibits in State’s Exhibit No. 4, are they a usable or a user amount or dealer amount?

A.  They are a dealer amount.  I mean, you would have to cut this several times in order to get it to fit into that pipe.

. . . .

CROSS-EXAMINATION

[Defense Counsel]:

. . . .

Q.  So when one gets cocaine that he is going to ingest for his own personal use, how does he get it?  Does it come wrapped in a little baggie or something?

A.  It depends on who he gets it from.  It could come wrapped in a baggie, it could come unpackaged.

Q.  Like a rock form?

A.  Yes, sir. 

The third jury note states, “This transcript did not contain the precise testimony by Webber that is in dispute.  Please submit the remainder of the cross-examination by Mr. Shaw, of Mr. Webber, as well as the readdress/questioning by the Prosecution.  (The remaining testimony of Webber.)”  The trial court then informed the jury that the law does not permit a rereading of the testimony and stated that any requests for testimony in dispute must be specific enough to allow the court reporter to find it. 

The fourth jury note states, “We want the testimony where Mr. Shaw specifically asks Mr. Webber if the amount of substance in evidence could be a user amount; and the testimony where the Prosecution readdresses Mr. Webber asking him whether he felt the amount in evidence was a dealer amount or user amount.”  The trial court responded that the requested items were not in evidence. 

5:
While Appellant did not file a motion to suppress, Appellant timely objected to the admission of this evidence on statutory and constitutional grounds.  
See
 
U.S. Const. 
amend IV;
 Tex. Const. 
 art. I, § 9;
 Tex. Code Crim. Proc. Ann.
 art. 38.23. 

6:
Officer Chaney described the contents of Exhibits One through Four. Exhibit One consisted of the black Kodak film canister.  Exhibit Two contained four plastic baggies of brown powder residue.  Exhibit Three consisted of four smaller Ziploc baggies of brown powdery residue.  Exhibit Four contained “loose rocks, brown powdering -- brown powdery residue rocks.” 

7:
In light of our decision on point three, we need not address Appellant’s first and second points concerning the legal and factual sufficiency of the evidence supporting his conviction.  
See
 
Tex. R. App. P.
 47.1.