Lincoln V. HANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–01–00427–CR.

Court of Appeals of Texas,
El Paso.

March 27, 2003.

absence the week of July 24, 2002.

Robert Udashen, Sorrels & Udashen, Dallas, for Appellant.

William T. Hill, Dist. Atty. of Dallas County, for State.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Lincoln Hanks appeals his conviction for possession with intent to deliver more than four grams but less than 200 grams of cocaine, enhanced by a prior felony conviction. A jury found Appellant guilty, found the enhancement paragraph true, and assessed punishment at imprisonment for a term of twenty years. We affirm.

## FACTUAL SUMMARY

In late 1998 and early 1999, the Dallas Police Department was investigating narcotic activity at 5727 Bellcrest which is located less than 1,000 feet from J.N. Ervin Elementary School. By February 11, 1999, officers had obtained a search warrant for the residence based upon a drug buy made two days earlier. Prior to execution of the warrant, however, they planned to make an undercover buy of narcotics at the location in order to insure that drugs would be found during execution of the warrant. Detective Richard Rossman was supervising that transaction. Approximately twenty officers were in the area participating in surveillance and providing support for both the controlled buy and the execution of the warrant that would follow.

Rossman had worked with a confidential informant, Rodney Howard, in the course of this investigation. After searching Howard and determining he did not have any narcotics on his person, Rossman gave him marked United States currency in the amount of $800 so that he could purchase up to one ounce of cocaine from Cedric Buster, who was at the residence. Because Buster did not know Howard, he would have to indirectly make his purchase through a third party, Appellant. Rossman dropped Howard off near a Popeye's Restaurant where he was to meet Appellant. Howard got in the passenger side of Appellant's car, a Chevrolet Celebrity, and they drove to 5727 Bellcrest. Rossman quickly drove to the surveillance area and got in position to watch while other officers kept Howard and Appellant under surveillance. The vehicle driven by Appellant arrived and pulled over to the curb in front of the house. Rossman recognized Buster due to what he described as his "extremely identifiable jewelry." He could see Buster in the front yard because it was illuminated by several floodlights. Moreover, one of Buster's large silver medallion necklaces reflected additional light.

Appellant got out of the car and Buster walked over to him. It appeared to Rossman that they had a conversation and exchanged something or shook hands. Buster then walked towards a black pickup parked closer to the house, retrieved something, and walked back to where Appellant stood. Appellant returned to the vehicle and Buster walked back towards

the residence. Appellant then drove away. In Rossman's opinion, the narcotics transaction had just taken place. After the vehicle passed out of Rossman's view, other officers took over the surveillance and the arrest of Appellant and Howard. Detective Jeff Gaertner and other officers participated in the execution of the search warrant at the residence. The $800 in marked currency was recovered from Buster.

The officers watching Appellant's car determined that they were going to stop the vehicle but before they could do so, Appellant suddenly pulled the vehicle over to the side of the street and stopped. Officer Philip Elliott quickly approached the driver's side of the vehicle. Elliott shined his flashlight in the car and saw Appellant holding a clear bag containing cocaine. When Appellant looked up at Elliott, his eyes "got real big" and he dropped the bag of cocaine. Elliott immediately grabbed Appellant and pulled him out of the car. Another officer removed Howard from the passenger side of the car. The officers searched Appellant and found $461, keys, and marihuana. Elliott found thirteen additional baggies of cocaine on the driver's side of the center armrest. In Elliott's experience, these types of baggies are used by drug dealers for the individual packaging and selling of cocaine. Following Appellant's arrest, Officer Elliott specifically asked him who owned the Chevrolet Celebrity he drove that evening. Appellant replied that he had bought the vehicle approximately two weeks earlier. He also told Elliott that he was in the process of moving and that the clothes in the trunk were his.

Officer Michael Mata participated in the arrest of Appellant and Howard. As he got the passenger out of the car, Mata saw crack cocaine on the seat and floorboard of the vehicle but he did not find any cocaine on Howard. A search of the vehicle's trunk revealed numerous items of clothing, a digital scale, blue baggies, crack cocaine, and a razor. Digital scales such as the one found in the trunk are commonly used for measuring drugs such as crack cocaine in one/tenth of a gram increments. The blue baggies found in the trunk were the same kind as those found in the front seat next to Appellant. The officers found a title in the glove box indicating that a person named Livia Villanueva owned the car. The crack cocaine recovered from the vehicle weighed 46.2 grams.

The State offered expert testimony through Detective Anthony Gipson that Appellant possessed the cocaine with intent to deliver. In forming this opinion, Detective Gipson evaluated the type and amount of drugs possessed, and the presence of packaging materials, scales, and money. Crack cocaine is typically sold in a one-tenth of a gram single "use" for $10 but it can be purchased in larger pieces. Even when a person possesses a larger rock of crack cocaine for multiple personal uses, there is no need for scales or individual baggies in which to place the single doses. Instead, the person will simply cut off the desired amount without weighing it on a scale. Dealers, on the other hand, employ scales in order to insure that they are giving their customers the correct amount of cocaine rather than too little or too much. As drug transactions utilize cash, Gipson also looks for the presence of money to indicate whether a person is dealing in drugs rather than possessing it for his own use. In this particular case, Gipson found it significant that Appellant possessed approximately 46.2 grams or 462 individual doses or uses of crack cocaine, along with a scale, razor, individual packaging materials, and a large sum of cash. In his expert opinion, Appellant possessed the cocaine with intent to deliver.

Appellant testified at trial that he borrowed the car he drove that evening from a friend named "Fast" in order to go to the store and stop at the home of a friend, Shundra Buster, who is Cedric Buster's sister. He was accompanied by Rodney Howard, whom he knew only as Big Boy. Howard had asked him for a ride. Appellant stopped at Shundra's home and spoke briefly with Cedric. When he learned Shundra was not home, he and Howard left. After leaving the residence, he had to stop his car on the next street because of traffic from a party. When he looked in his rearview mirror, he saw police officers running towards his car. He admitted possessing marihuana but denied buying any cocaine from Cedric. He also denied taking any money from Howard, possessing any of the cocaine in the vehicle, or selling drugs to anyone. He believed that the cocaine in the car belonged to Howard.

During rebuttal, Rossman testified that Appellant had purchased crack cocaine from Cedric Buster on behalf of Howard only two days earlier on February 9, 1999. It was this transaction that formed the basis for the search warrant. As in this case, Appellant drove the same Chevrolet Celebrity to 5727 Bellcrest and purchased the crack cocaine.

## LESSER INCLUDED OFFENSE

■ In Issue One, Appellant contends that the trial court erred in refusing to instruct the jury on the lesser-included offense of possession of cocaine. To determine whether he was entitled to a charge on the lesser-included offense, we apply a two-pronged test. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Avila v. State*, 954 S.W.2d 830, 842 (Tex.App.-El Paso 1997, pet. ref'd). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Rousseau*, 855 S.W.2d at 672; *Avila*, 954 S.W.2d at 842. Second, there must be some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau*, 855 S.W.2d at 672; *Avila*, 954 S.W.2d at 842. The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given. *Banda v. State*, 890 S.W.2d 42, 60 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Avila*, 954 S.W.2d at 842. Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992); *Avila*, 954 S.W.2d at 842. An accused is guilty only of a lesser-included offense if there is evidence that affirmatively rebuts or negates an element of the greater offense, or if the evidence is subject to different interpretations, one of which rebuts or negates the crucial element. *See Ramirez v. State*, 976 S.W.2d 219, 227 (Tex.App.-El Paso 1998, pet. ref'd). That the jury may disbelieve crucial evidence pertaining to the greater offense is not sufficient to warrant the submission of the lesser-included offense submission to the jury; there must be some evidence directly germane to the lesser-included offense to warrant such submission. *See Skinner v. State*, 956 S.W.2d 532, 543 (Tex.Crim.App.1997), *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998).

■ Possession of a controlled substance is a lesser-included offense of possession with intent to deliver a controlled substance. *Upchurch v. State*, 23 S.W.3d 536, 538 (Tex.App.-Houston [1st Dist.]

2000, pet. ref'd); *Greer v. State*, 783 S.W.2d 222, 224 (Tex.App.-Dallas 1989, no pet.). The only remaining issue is whether there is some evidence that would permit a rational jury to find that if Appellant is guilty, he is guilty only of the lesser-included offense.

Appellant argues on appeal that the evidence showing he is a drug user is sufficient to show that he is guilty only of possession for personal use and had no intent to deliver. Appellant did not testify at trial that he possessed the cocaine for his personal use and had no intention to deliver it to Howard or anyone else. To the contrary, he denied possessing the cocaine at all. Even assuming that his possession of marihuana at the time of this arrest and his 1995 conviction for possession of cocaine is evidence of drug use by Appellant, the evidence does not negate an intent to deliver the 46.2 grams of cocaine he possessed in the instant case. In the absence of any evidence showing that Appellant is guilty only of the lesser offense, the trial court did not err in failing to instruct the jury on possession of cocaine. Issue One is overruled.

### ARTICLE 38.23 CHARGE ERROR

In Issue Two, Appellant asserts that the trial court's instruction based upon Article 38.23 of the Code of Criminal Procedure is defective because it did not adequately apply the law to the facts.

#### Standard of Review

When reviewing charge error, we utilize a two-step process. *Orona v. State*, 52 S.W.3d 242, 249 (Tex.App.-El Paso 2001, no pet.). Our first task is to determine whether error actually exists in the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Orona*, 52 S.W.3d at 249. In determining whether charge error exists, we must view the charge as a whole and our review should not be limited to a series of isolated statements or parts of the charge standing alone. *Orona*, 52 S.W.3d at 249; *see Holley v. State*, 766 S.W.2d 254, 256 (Tex.Crim.App.1989). Second, we must determine whether sufficient harm resulted from the error to require reversal. *Almanza*, 686 S.W.2d at 171; *Orona*, 52 S.W.3d at 249. Which harmless error standard applies depends upon whether the defendant objected. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App. 1994); *Orona*, 52 S.W.3d at 249. In a case where the defendant failed to object, he must show that he suffered actual egregious harm. *Almanza*, 686 S.W.2d at 171; *Orona*, 52 S.W.3d at 249.

#### Article 38.23

Article 38.23 provides for the exclusion of unlawfully obtained evidence and requires the trial court to instruct the jury that such evidence shall be disregarded if it believes, or has a reasonable doubt, that the evidence was obtained in violation of constitutional or statutory protections. TEX.CODE CRIM.PROC.ANN. art. 38.23(a)(Vernon Pamphlet 2003). An Article 38.23 instruction directs a jury to disregard evidence if it resolves, in a defendant's favor, a factual dispute concerning the manner in which the evidence was obtained. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim. App.1986). If a defendant successfully raises factual disputes over whether evidence was illegally obtained, inclusion of a properly worded Article 38.23 instruction is mandatory. *Bell v. State*, 938 S.W.2d 35, 48 (Tex.Crim.App.1996).[1]

---

1. There is no dispute that Appellant was entitled to such an instruction as the Dallas Court of Appeals had previously reversed Appellant's conviction and remanded the case for a retrial. *See Hanks v. State*, 05–99–01630–CR,

*The Instruction*

The court's charge included the following instruction:

You are instructed that no evidence obtained by an officer or other person in violation of any provision of the constitutional laws of the State of Texas or of the constitutional laws of the United States of America shall be admitted into evidence against the accused on the trial of any criminal case. You are further instructed that if you believe or have a reasonable doubt that the evidence was obtained in violation of the provisions of these laws, then in such event, the jurors shall disregard any such evidence.

Law enforcement officers are permitted to make a temporary investigative detention of a motorist if the officer has specific facts which, taken together with rational inferences from those facts, leads them to conclude that a person detained actually is, or has been, or soon will be engaged in criminal activity.

You are further instructed that law enforcement officers have probable cause to make such investigative detention and/or arrest if the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed.

Now if you find and believe from the evidence beyond a reasonable doubt that the evidence identified as State's Exhibit 6, 7, 8, 8A, 9, 10 and 11 inclusive were obtained in contravention of the constitutional laws of the United States or the State of Texas, then in that event you will disregard any such evidence so obtained and consider it for no purpose.

2000 WL 1499178 (Tex.App.-Dallas 2000, no

Appellant asserts that the trial court's instruction failed to apply the law to the facts because it did not specifically ask the jury to resolve disputed fact issues invalidating or justifying the officers' conduct. We disagree. The trial court's instruction clearly states the applicable law and instructs the jury to disregard particular items of evidence in the event that it found the evidence had been seized by the officers in contravention of the stated law. Appellant is not entitled to a more detailed instruction as it would have constituted a comment on the weight of the evidence. *See Mendoza v. State*, 88 S.W.3d 236, 240 (Tex.Crim.App.2002)(although defendant was entitled to jury instruction pertaining to voluntariness of his confession, he was not entitled to requested jury instructions regarding the criteria for disregarding his confession as they would constitute a comment on the weight of the evidence and other instructions adequately addressed the issues). Issue Two is overruled.

**REASONABLE DOUBT INSTRUCTION**

In Issue Three, Appellant argues that the trial court erroneously included in its charge an instruction pertaining to reasonable doubt. Appellant admits that he did not object to the following instruction:

The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt. And if it fails to do so, you must acquit the defendant.

*It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.* [Emphasis added].

pet.)(unpublished memorandum opinion).

■ Consistent with due process, the State is required to prove each element of an offense beyond a reasonable doubt. *See* TEX.PEN.CODE ANN. § 2.01 (Vernon 1994); TEX.CODE CRIM.PROC.ANN. art. 38.03 (Vernon Supp.2003). The federal constitution neither requires nor prohibits the giving of a definition of reasonable doubt. *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Further, no particular form of words must be used when advising the jury of the prosecution's burden of proof. A defendant has long been entitled to have the reasonable doubt standard applied in the jury charge or instructions[2] but Texas did not require that the reasonable standard be defined until the decision in *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). Several years later, the Court of Criminal Appeals determined that the better practice is to give no definition of reasonable doubt to the jury. *Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000)(overruling the portion of *Geesa* which required trial courts to instruct juries on the definition of "beyond a reasonable doubt"). The court noted, however, that no reversible error would occur if both the State and defense agreed to give the *Geesa* definition to the jury. *Paulson,* 28 S.W.3d at 573.

Citing *Phillips v. State,* 72 S.W.3d 719 (Tex.App.-Waco 2002, no pet.), Appellant maintains that the highlighted paragraph of the jury instruction is contrary to *Paulson* and effectively lessened the State's burden of proof to the point of causing him egregious harm. In *Phillips,* the defendant objected to a only a portion of an instruction similar to the instruction here. The Waco Court of Appeals found the instruction contrary to *Paulson* but deemed it harmless. *Phillips,* 72 S.W.3d at 721. Some courts have declined to follow *Phillips* or have held that it is not

error to include such an instruction in the charge. *See Minor v. State,* 91 S.W.3d 824, 828–29 (Tex.App.-Fort Worth 2002, pet. filed); *Carriere v. State,* 84 S.W.3d 753, 759 (Tex.App.-Houston [1st Dist.] 2002, pet. filed); *Vosberg v. State,* 80 S.W.3d 320, 323–24 (Tex.App.-Fort Worth 2002, pet. filed); *see also Brown v. State,* 91 S.W.3d 353 (Tex.App.-Eastland 2002, no pet.)(holding defendant did not suffer egregious harm from instruction). *But see Rodriguez v. State,* 96 S.W.3d 398 (Tex. App.-Austin 2002, pet. ref'd)(holding that the instruction is definitional "in a sense" and therefore violates *Paulson* ). We agree with those courts holding that the challenged instruction does not constitute a definition of reasonable doubt and, therefore, does not violate *Paulson. See Minor,* 91 S.W.3d at 829; *Carriere,* 84 S.W.3d at 759. Issue Three is overruled.

## FACTUAL SUFFICIENCY

■ In his final issue, Appellant challenges the factual sufficiency of the jury's implied determination that the police lawfully seized the cocaine and other evidence taken from Appellant's car. The State responds, in part, that Appellant is not entitled to factual sufficiency review of this implied finding because it is not an element of the offense. Appellant does not challenge the trial court's ruling on the lawfulness of the detention and subsequent search.

It is fundamental that a defendant has a right not to be convicted on illegally obtained evidence. *See Pierce v. State,* 32 S.W.3d 247, 253 (Tex.Crim.App.2000). To this end, Article 38.23 provides that:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or

---

**2.** *See Pigg v. State,* 162 Tex.Crim. 521, 287 S.W.2d 673, 674 (1956).

laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a).

 The first sentence of Article 38.23(a) pertains to the admissibility of evidence. *Pierce,* 32 S.W.3d at 251. The admissibility of evidence is a matter for the trial court's exclusive determination. *Id.* The decision to exclude evidence could be determined by a ruling of law, a finding of fact, or both. *Id.* It is possible to raise the question of admissibility by pretrial motion to suppress or by objection when the evidence is offered at trial. *Id.*

The second sentence found in Article 38.23(a) mandates a jury instruction but only in the event of a factual dispute about how the evidence was obtained. *See id.* An instruction given pursuant to Article 38.23 directs a jury to disregard evidence if it resolves, in a defendant's favor, a factual dispute concerning the manner in which the evidence was obtained. *Thomas,* 723 S.W.2d at 707. A jury's guilty verdict necessarily means that it resolved the factual dispute against the defendant and found that essential evidence was not obtained in violation of state and federal law. *See Pierce,* 32 S.W.3d at 253. The jury's determination of the factual dispute does not supplant or render moot the trial court's ruling on the admissibility of the evidence. *Id.* Therefore, a defendant may appeal the trial court's ruling even where

the jury has by its guilty verdict resolved the factual dispute against him. *Id.* The underlying basis for *Pierce's* holding is that leaving the issue solely to the jury would deny the defendant due process of law. *Pierce,* 32 S.W.3d at 252–53. A jury cannot be reasonably expected to determine the legality of the means by which the evidence was obtained without being distracted by its probative value. *Id.* Thus, the trial court is afforded the primary responsibility for ensuring that the defendant has a fair hearing and a reliable determination of the legality by which evidence is obtained while the jury is left with the role of "backup protection against erroneous judicial rulings" admitting evidence. *See id.* at 253.

While *Pierce* holds that a defendant may appeal the trial court's determination on the admissibility of the evidence, it does not address the converse issue, namely, whether a defendant may raise a factual sufficiency challenge to the jury's implied finding on the same issue. A defendant is, of course, entitled to legal and factual sufficiency review of the elements of the offense. *See Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The jury's implied finding made pursuant to Article 38.23(a) is not an element of the offense.

In *Malik v. State,* the Court of Criminal Appeals determined that this implied finding is not subject to legal sufficiency review. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). If a defendant is not entitled to legal sufficiency review, it follows that he is not entitled to factual sufficiency review. *See Johnson v. State,* 95 S.W.3d 568 (Tex.App.-Houston [1st Dist.] 2002, pet. filed).[3] *But see Davy v.*

**3.** The First Court of Appeals initially held in *Coleman v. State,* 45 S.W.3d 175, 178 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) that a defendant may obtain factual sufficiency

*State,* 67 S.W.3d 382, 390 (Tex.App.-Waco 2001, no pet.). Accordingly, Issue Four is overruled. Having overruled all issues, we affirm the judgment of the trial court.

review of the implied finding. However, the Court of Appeals overruled *Coleman* in *John-*

