Death Opinion







 







IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,318






REGINALD PERKINS, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM TARRANT COUNTY






Holcomb, J., delivered the opinion for a unanimous Court




OPINION




 Appellant was convicted in March 2002 of capital murder. Tex. Pen. Code § 19.03(a). 
Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal
Procedure article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art.
37.071 §2(g). Direct appeal to this Court is automatic. Art. 37.071 §2(h). Appellant raises
eleven points of error. We affirm.

 In points of error one, two, and three, appellant claims the Texas death penalty scheme
violates the Due Process Clause of the Fourteenth Amendment by failing to place on the State
the burden of disproving the mitigation special issue beyond a reasonable doubt. Appellant
relies on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584
(2002). Appellant's motion to set aside his indictment and his objections to the jury charge
on these grounds were overruled.

 In Resendiz v. State, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003), we rejected the
defendant's claim that Apprendi requires the State to bear the burden of disproving beyond a
reasonable doubt that the mitigation issue should be answered in the negative. Ring does not
support appellant's argument, either. In Ring, the Supreme Court applied Apprendi to require
a jury finding beyond a reasonable doubt on aggravating factors under the Arizona death penalty
statute. Ring is not at odds with the Texas death penalty statute, which requires a jury finding
on the applicable special issues beyond a reasonable doubt. Ring does not compel imposition
of such a finding in the context of the mitigation special issue. Both Apprendi and Ring are
concerned with fact-findings that have the result of increasing the penalty over the statutory
maximum. Under the Texas statute, the maximum penalty for a capital offense is death. The
mitigation issue does not increase the statutory maximum. To the contrary, the mitigation
issue is designed to allow for the imposition of less than the statutory maximum, a life
sentence. The Texas death penalty scheme does not violate Apprendi or Ring for its failure
to place the burden on the State to disprove the mitigation special issue. Points of error one,
two, and three are overruled.

 In his fourth and fifth points of error, appellant claims the trial court erred in 
instructing the jury on the definition of "beyond a reasonable doubt" at guilt/innocence and at
punishment, in violation of Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000). 
Appellant's complaint is directed at statements in the jury instructions that the State was not
required to prove guilt, the first special issue, or the extraneous offenses "beyond all possible
doubt," but that the State's proof on these matters must exclude "all reasonable doubt." 
Appellant objected to the charge on these grounds at trial.

 In Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), we adopted an instruction
on the meaning of "beyond a reasonable doubt" that was thereafter required to be included in
the jury charge in all criminal cases. About ten years later, the Geesa instruction was set aside
in Paulson, 28 S.W.3d at 573, in which we concluded that "the better practice is to give no
definition of reasonable doubt at all to the jury." We found particularly problematic three
separate paragraphs of the instruction that attempted to define reasonable doubt. Id. at 572.

 The instruction appellant complains of is virtually identical to one of the paragraphs of
Geesa's six-paragraph instruction, but it is not one of the three definitional paragraphs
specifically criticized in Paulson. While we continue to adhere to our position that the better
practice is to leave wholly to the jury the task of assigning meaning to the phrase "beyond a
reasonable doubt," the instruction given here does not encroach upon that task. (1) The trial court
did not abuse its discretion by including the statements in the jury charges. Points of error
four and five are overruled.

 In point of error six, appellant claims the trial court abused its discretion in failing to
grant a mistrial when a State's witness stated during the guilt/innocence phase that appellant
had previously been to prison. The trial court granted appellant's pretrial motion in limine
prohibiting the State from presenting any evidence of appellant's prior criminal record without
obtaining a ruling outside the presence of the jury. At trial, during the direct examination of
appellant's father, who was also the victim's husband, the following exchange occurred:

 [Prosecutor]. Now, was there a time - did [appellant], though - eventually did
he come back to live with the family?


 [Witness]. Yes. He came back like -


 Q. Just as best - just as best as you can. Sometime in the last ten years?


 A. Yeah. I think he was in prison - 


Appellant immediately objected that such a statement was in violation of the previously granted
motion in limine. The trial court sustained the objection, overruled the motion for mistrial,
and instructed the jury to disregard the witness's statement:

 Now, ladies and gentlemen, I want you to pay real close attention. I'm going to
read a statement to you. I'm going to ask the jury to hold an answer to the
question. Then I'm going to go through each one of you individually and call
your name, okay, and ask you some questions.

 You have heard testimony from [the witness] that, open quotes, "Yeah, I
think he was in prison," close quotes. The Court makes no comment as to the
truthfulness of this testimony. You are, however, ordered to disregard such
testimony, whether true or not, and strike it from your mind. You're ordered not
to consider this testimony for any purpose whatsoever during your deliberations,
as such would be a violation of this Court's instructions as well as a violation of
your oath to follow the law as given to you by this Court.


When individually polled, each juror agreed that he could obey the court's instruction to
disregard. Appellant claims the instruction could not remedy the harm arising from such a
prejudicial statement.

 Ordinarily, a prompt instruction to disregard cures any error associated with an
improper question and answer. Martinez v. State, 17 S.W.3d 677, 689 (Tex. Crim. App.
2000). A mistrial is required only when improper evidence is admitted which was "clearly
calculated to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jury." Hinojosa v.
State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Otherwise, the jury is presumed to follow
the trial court's instructions to disregard the improperly admitted evidence. Id. Whether an
erroneous admission of evidence requires a mistrial is determined by looking at the facts and
circumstances of the particular case. Id.

 Here, the erroneously admitted statement was brief and isolated, was not mentioned
again by the prosecutor, the jurors were thoroughly instructed by the court, and every juror
indicated the ability to disregard the statement. The statement was not of such a nature that it
could not be put aside by the jurors. The trial court did not abuse its discretion in overruling
appellant's motion for a mistrial. Id.; see also Kemp v. State, 846 S.W.2d 289, 308 (Tex.
Crim. App. 1992), cert. denied, 508 U.S. 918 (1993). Point of error six is overruled.

 In point of error seven, appellant claims the trial court erred in admitting the testimony
of Detective Scott Campbell concerning oral statements made by appellant that he alleges were
the fruit of an illegal arrest. Appellant argues that his arrest was made without probable cause
and, therefore, statements made to Campbell should have been suppressed. 

 Several months before trial, a suppression hearing was held regarding the admission of
appellant's various oral statements and written statement. The statements made to Fort Worth
Detective Scott Campbell that are the subject of this point of error were not addressed at that
pretrial hearing. Appellant objected during the pretrial hearing to the admission of his written
statement and certain oral statements on the grounds that he had not been properly
Mirandized, (2) the oral statements did not comply with the requirements of Article 38.22, and
the admission of the statements violated Texas Rule of Evidence 403. At the end of the
pretrial hearing, appellant presented the argument that his detention and arrest were illegal.

 The admissibility of the statements made to Campbell which are at issue in this point
of error were addressed in a hearing outside the presence of the jury. At that hearing, Campbell
testified that appellant was one of the offenders he was charged with overseeing during his
assignment to the sex-crimes division. On the evening appellant was brought into the police
station for questioning in connection with the victim's disappearance, Campbell was called
back to work for the purpose of determining whether there was probable cause for issuing a
warrant for appellant's arrest based on a failure to comply with the sex-offender registration
requirements. Campbell was at his desk typing the warrant for appellant's arrest when he saw
appellant being brought into the station by three other officers. Campbell told the officers to
remove appellant's handcuffs, at which time appellant said to Campbell, "Hey, Mr. Campbell,
I'm not good for this," and "I was just up in your office today to see you." Campbell told
appellant he could not talk with him at that point, but offered him a cigarette and a drink, and
asked him if he needed to use the restroom. As appellant was escorted around the corner to
an interview room a few moments later, he said again to Campbell, "Hey, I was here to see you
just today. I even signed the logbook." (3) Campbell then retrieved the logbook and located
appellant's name. The logbook revealed that appellant had in fact signed in that day, but the
indicated sign-in time of 9:00 a.m. was out of sequence with the times indicated next to the
names of persons who signed in before appellant. (4)

 Appellant ultimately decided not to object to the first statement, "I'm not good for this." 
His objections were lodged only against the statements which led to the logbook. Appellant
objected to those statements as being in violation of Article 38.22 and Rule of Evidence 403. 
After a recess but still outside the presence of the jury, the following exchange occurred
between appellant and the court:

 [Defense attorney]: In further support of our request to exclude the oral
statements that Detective Campbell is going to testify to, we would offer the
pretrial motions and hearing, the testimony that was given regarding the Miranda
issue. All of that is in the record already, we would reoffer that testimony in
support of - 


 THE COURT: Is there something there you want to point out to me?


 [Defense attorney]: No, Judge. Just in an abundance of caution.


 THE COURT: Okay.


 [Defense attorney]: Because we've already plowed this ground once. We
would offer that in support of our motion.


 THE COURT: Okay. I'm just saying if there's something to shed any
light on my ruling - okay. You're just covering yourself.


 [Defense attorney]: Yeah. We're just offering that additional testimony.


 Appellant now argues that the statements made to Campbell should have been
suppressed as the fruit of an illegal arrest made without probable cause. However, no such
objection was made at trial in connection with Campbell's statements. Appellant argued only
that the statements to Campbell were inadmissible under Article 38.22 and Rule 403. 
Although he also stated that in support of his argument, he was offering "the pretrial motions
and hearing, the testimony that was given regarding the Miranda issue," this reference is not
clear and specific enough to inform the trial court that he intended to re-assert the theory of
illegal arrest based on probable cause, and there is no indication that the trial court understood
him to do so. Appellant's statement might just as likely have been interpreted by the trial court
as only re-asserting the Miranda claim from the first hearing. Thus, appellant's trial objection
does not comport with his complaint on appeal. Chambers v. State, 903 S.W.2d 21, 32 (Tex.
Crim. App. 1995); Little v. State, 758 S.W.2d 551, 564-65 (Tex. Crim. App.), cert. denied,
488 U.S. 934 (1988). Point of error seven is overruled.

 In his eighth point of error, appellant claims the trial court erred in admitting into
evidence certain statements he made while in the State of Ohio on the ground that the
statements were inadmissible under Ohio law. At the punishment phase of the trial, Ramola
Washington testified that she and appellant were involved romantically in 1980 and were living
together in Ohio. Washington had previously shared an apartment with her sister Paula. She
gave appellant the keys to Paula's apartment, with instructions to return them to Paula. Five
days later, appellant told Washington that something had happened to Paula. The two went to
Paula's apartment, where Washington found that Paula had been strangled to death. While
appellant was in jail sometime later in connection with other offenses, he and Washington were
married. During a telephone call from the jail after their marriage, appellant told Washington
that he had killed Paula.

 When the State called Washington to the stand, the trial court granted appellant's
request for a hearing outside the presence of the jury. The three issues at the hearing were
Washington's ability to identify appellant, the existence of a spousal privilege, and the
witness's competence to testify. Regarding the spousal privilege issue, defense counsel
initially contended that there might be a privilege but further research was required to be sure. 
The State responded that Washington's testimony would be admissible under Texas Rule of
Evidence 504 because the spousal privilege does not apply to acts that occurred before the
marriage. Appellant then suggested that a privilege might exist under Ohio law. Relying upon
a prior conflict of laws case from this Court, the State replied that the evidence would be
admissible under the law of the forum, which was Texas.

 The trial court turned to the factual question of whether appellant and the witness were
married when the statement was made. Washington testified that appellant's statement that he
killed her sister was made after the marriage. The State then said that appellant had the burden
to prove the marriage. The facts were clouded because, when the witness wanted to marry
another man years later, "legal aid" told her she was not married to appellant. After addressing
other issues, the judge recessed the trial for the rest of the day to permit the lawyers to
research the law and facts on the issue of privilege.

 The next morning, appellant offered documents, which the State had provided, that
included the Ohio court's grant of permission for appellant to be married in jail, the application
for marriage license, and the marriage license. Relying upon Gonzalez v. State, 45 S.W.3d
101 (Tex. Crim. App. 2001), defense counsel asserted that the application of a privilege is
determined by the law of the state with the most significant relationship to the evidence in
question. He discussed the facts in Gonzalez, in which a confession to a priest in California
was found to be admissible because, although the confession to the priest would have been
privileged under Texas law, it was not privileged under California law, and California was the
state with the most significant relationship to the confession. Defense counsel argued that the
same rule should be applied to hold inadmissible evidence that was privileged under the law of
Ohio, the state with the most significant relationship to the communication in the present case.

 Defense counsel then asserted, with agreement from the State, that appellant's
statement to Washington would be admissible under Texas law but inadmissible under Ohio
law. Although the prosecutor agreed that Texas law favored admission while Ohio law did not,
he differed with defense counsel's interpretation of Gonzalez concerning the choice of law
standard. The prosecutor argued that the evidence was admissible if either the state with the
most significant relationship or the forum state permitted its admission unless, in the latter
case, there was a special reason why the forum policy of admissibility should not be given
effect. Defense counsel then pointed out that the rule favoring admissibility was not automatic
but a strong preference, and he argued that there was a special reason for not giving effect to
the forum policy of admissibility: doing so would violate the legitimate expectations of the
married couple, especially since all relevant contacts were in Ohio (the extraneous offense
occurred there and appellant's statement was made there) and had occurred twenty years in the
past. According to defense counsel, these expectations were especially salient in the case at
bar because appellant expressly relied upon the spousal privilege in deciding to reveal to his
wife his participation in the Ohio murder. The trial court then asked how the law would be
affected if a defendant decided to marry someone for the purpose of being able to talk about
a previously committed crime. The State opined that the communication would fall within the
crime-fraud exception to the Texas privilege. The defense responded that the trial court's
scenario would be relevant to whether a privilege existed within a certain jurisdiction but would
not be relevant to a choice-of-law analysis. The prosecutor countered that the fact scenario
would be relevant to whether a special reason existed to override forum law. Defense counsel
then argued that no evidence showed that appellant married the witness solely for the purpose
of informing her of the crime under the cloak of privilege. 

 Other than their agreement that Ohio law would bar the testimony and Texas law would
permit it, neither party laid out, discussed, or argued the underlying privilege law of the
respective forums, or indeed ever stated which privilege they were discussing - testimonial
or confidential communications. Ultimately, both parties agreed at trial that the crux of the
admissibility question was whether there were good reasons for not giving effect to Texas's
policy favoring admissibility in the face of a privilege recognized in Ohio. 

 The problem with this agreement is that it was based on at least one false premise: that
the testimony was admissible under Texas law. It was not. Rule 504 shields from disclosure
confidential communications made during marriage, with certain exceptions. See Tex. R. Evid.
504(a). Appellant's statement to the witness was a confidential communication made during
the marriage and no exception is applicable. 

 However, to preserve error on appeal, a party must, among other things, state the ground
for objection "with sufficient specificity to make the trial court aware of the complaint, unless
the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A).
Obviously, no Texas Rule 504 claim was articulated, or apparent from the context, because
appellant affirmatively represented that he had no basis to object under Texas privilege rules. 
As a result, appellant forfeited any claim based on the Texas marital communications privilege.

 Analysis of appellant's claim of error under Ohio law becomes problematic, due to
appellant's presentation of the issue at trial as a choice of law claim, in which the trial judge
must decide whether the interests underlying the Ohio privilege are weighty enough to
outweigh the interests underlying a Texas rule favoring admission. The State had correctly
framed the choice of law rule in such a situation: if evidence is privileged under the law of the
state with the most significant relationship to the communication, but is not privileged under
the law of the forum, it should be admitted "unless there is some special reason why the forum
policy favoring admission should not be given effect." Gonzalez, 45 S.W.2d at 103 (quoting
Restatement (Second) of Conflict of Laws §139 (1971)). The reason for this rule is that "the
forum's interest in reaching correct results in its domestic litigation strongly favors disclosure
of all evidence that is not privileged under its own laws." Id. (quoting Restatement (Second)
of Conflict of Laws §139 cmt. d (Supp. 1988)). It makes little sense, however, to determine
whether there are good reasons not to effectuate a forum policy of admissibility when such a
forum policy does not actually exist. (5) But the parties' erroneous representations placed the
trial court in the position of analyzing the issue as if Texas did have such a policy. 

 We have recently held that a party can forfeit error by failing to correct a trial court's
mistaken belief about facts underlying his claim. Loredo v. State, 2004 Tex. Crim. App.
LEXIS 635 (April 7, 2004). In Loredo, the defendant failed to correct the trial court's
mistaken belief that a prospective juror had been rehabilitated on whether she could consider
probation. Id. at *5. In failing to correct that mistaken belief, Loredo failed to comply with
Rule 33.1's requirement that the trial court be informed of his complaint because he failed to
show that his challenge for cause should have been granted. Id. at *8-*9. 

 Similar considerations may be involved when a party misinforms the trial court
regarding a proposition of law. It is true that the parties cannot by agreement bind the trial
court to an erroneous view of the law. See Ex parte Fierro, 79 S.W.3d 54, 56-57 (court's
opinion), 57-58 (Holcomb J., dissenting)(Tex. Crim. App. 2002)(parties erroneous belief juror
was disqualified did not create manifest necessity for a mistrial). But where the party making
the complaint has the burden to preserve error, that party's misrepresentation of the law is
relevant to whether he has sufficiently informed the trial court of his complaint. 

 That brings us to another problem with the manner in which appellant presented his
claim at trial: he failed to inform the trial court regarding the exact nature of Ohio's spousal
privilege. In essence, appellant was seeking to have the trial court take judicial notice of Ohio
law. When a party asks the trial court to take judicial notice of the law of another state, the
burden is on that party to supply sufficient information to enable the trial court to comply with
the request:

A court upon its own motion may, or upon the motion of a party shall, take
judicial notice of the constitutions, public statutes, rules, regulations,
ordinances, court decisions, and common law of every other state, territory, or
jurisdiction of the United States. A party requesting judicial notice be taken of
such matter shall furnish the court sufficient information to enable it to
properly comply with the request....


Tex. R. Evid. 202 (emphasis added). 

 If admissibility of the evidence involving the communication had turned solely upon the
existence of a privilege in the state with the most significant relationship to the
communication, then informing the trial court that the most-significant-relationship state's
privilege covered the communication would have been sufficient. But, as discussed above, that
was not the case. The trial court was not asked to decide whether the evidence was admissible
under Ohio law; rather the trial court was asked to decide whether Ohio's interests in
protecting the privilege were so weighty that they constituted a special reason for not giving
effect to a forum (Texas) policy of admission. But engaging in such a balancing process is
impossible without the text of the Ohio privilege, or caselaw interpreting that privilege, to
show what kinds of interests actually underlie Ohio's spousal privilege law. The bare fact of
a spousal privilege of some sort is not by itself sufficient information from which to conduct
this type of analysis.

 Appellant's complaint was not sufficiently specific to make the trial court aware of his
entitlement to relief. Consequently, error was procedurally defaulted under Rule 33.1. Point
of error eight is overruled. 

 In point of error nine, appellant claims the trial court violated his right to effective
assistance of counsel by refusing his request to retroactively exercise peremptory challenges
against two jurors. Several weeks into voir dire, the State informed appellant and the trial court
about a newly discovered witness to whom appellant had allegedly made incriminating
statements when they were cellmates. Appellant says that the anticipated nature of the newly
found witness' testimony caused him to change his trial strategy, which in turn affected his
approach during voir dire. Appellant requested two additional peremptory challenges for use
on two previously accepted jurors, Susan Margarette Duvall and Pamela Bauerle Page. This
request was denied. Appellant then attempted to use two of his remaining peremptory
challenges on Duvall and Page. He claimed these two jurors had been "selected for their
strength in circumstantial evidence cases," but the nature of the case had now changed in light
of the anticipated testimony. Appellant argues that due to the trial court's ruling, his trial
counsel was rendered ineffective because he did not make an intelligent and informed decision
when he accepted Page and Duvall as jurors.

 In order to prevail on a claim of ineffective assistance of counsel, appellant must prove
by a preponderance of the evidence (1) that counsel's performance was deficient and (2) that,
but for counsel's deficient performance, the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668 (1984). We have repeatedly stated that
"[i]f counsel's reasons for his conduct do not appear in the record and there is at least the
possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's
decisions and deny relief on an ineffective assistance claim on direct appeal." Ortiz v. State,
93 S.W.3d 79, 88 (Tex. Crim. App. 2002).

 Appellant claims his counsel's performance was deficient because he was uninformed
and the fact that he was uninformed should have been corrected by the trial court. But, at the
time counsel accepted Duvall and Page, he was adequately informed, and appellant does not
allege that his decision to accept the venirepersons at that point was not based on reasonable
trial strategy. The fact that counsel later received information that allegedly would have
changed his decision about the prospective jurors did not render counsel ineffective. To the
contrary, counsel attempted to utilize peremptory strikes against them upon receiving the
information. Appellant does not show at what point counsel's performance was or became
ineffective. The fact that the trial court did not allow counsel to use a retroactive peremptory
strike did not render counsel's performance ineffective. Point of error nine is overruled. 

 In point of error ten, appellant claims the trial court erred by relying on venireperson
Marion King Lewis' race as the reason for overruling his challenge for cause against Lewis. 
Appellant challenged Lewis for cause on the grounds that she could not follow the law
regarding the burden of proof on the first special issue. In overruling appellant's challenge,
the trial court stated:

 The Court does think she vacillated back and forth, but I do think she was
having a hard time understanding it, as many jurors do. But she brought up on
her own, without prompting, early on in the voir dire process, that her personal
feelings would not get in the way of what the law was and I came back and asked
her about that later. I do not - and I think she is - I've got to get a feel for the
whole juror and I don't think we've had anybody that we've had up here yet that
would try to be fairer on a case than this lady. She hasn't got any axe to grind. 
I think she will answer these questions. Sure, they're tough, but they're tough
- most attorneys have a hard time with this.

 And I also want the record to reflect that she's African-American. And
having looked ahead at those left, the composition of the jury, I think she'd
make a good juror.

 The objection is overruled.


Based upon the emphasized comments, appellant now claims the trial court's ruling was
racially motivated. Appellant did not object at trial to the court's comments or otherwise
claim the court's ruling was racially motivated. By failing to object and assert his claim at
trial, appellant has failed to preserve error for review on appeal. Tex. R. App. P. 33.1. Point
of error ten is overruled.

 In point of error eleven, appellant claims the trial court erred by allowing the State to
bind a venireperson to specific facts while trying to rehabilitate her on issues for which she
was challengeable for cause. After appellant's voir dire questioning of venireperson Linda
Croft Warren, appellant challenged her for cause in part on the ground that she would answer
the first special issue "yes" once she found a defendant guilty of intentional murder. Warren's
statements to this effect were contrary to the position she had expressed when questioned
initially by the State.

 The State attempted to rehabilitate Warren by further questioning her on this issue. 
Appellant objects to the following as an attempt to impermissibly bind Warren to specific facts
under Standefer v. State, 59 S.W.3d 177 (Tex. Crim. App. 2001):

 [Prosecutor]: Okay, Ms. Warren. First off, I want to talk to you about Special
Issue Number One and I think the defense had asked you a question if you had
found someone guilty of the offense of capital murder without legal
justification or excuse, would you answer this Special Issue Number One yes. 
And I think you said yes and I also remember you making some comments that
you would want to look at the things I put up earlier that you couldn't remember.


 [Warren]: Right.


 Q. Now, do you understand that in answering this special issue, you could be
faced with many, many different fact situations with a capital murder. It could
be as - it could be as heinous as a career criminal who goes into a store - 


 [appellant's objection overruled]


 Q. I mean, you could be dealing with facts of a career criminal who walks into
a convenience store with the intent to kill the clerk. He kills the clerk. Makes
a statement, if I get a chance, I'm going to rob another convenience store and kill
the clerk. Or it could be a fact situation where you've got a 17-year-old kid who
- 


 [appellant's objection overruled and granted running objection]


 Q. Or it could be a 17-year-old kid who walks in to rob a convenience store,
panics in the middle, closes his eyes, points that gun and shoots with the intent
to kill the clerk, and that person is remorseful for their actions.


 So there are a lot of situations - and I'm not trying to bind you, but I
remember when I asked you this question when I had you on voir dire. I asked
you would you let the evidence guide you in answering this question. And would
you do that?


 A. Yes, sir.

 

 Appellant argues that the State bound Warren to the notion that she could fairly answer
the future dangerousness issue "no" under a particular set of facts. At a minimum, appellant
maintains, the questions set "hypothetical parameters" that Warren would apply in making her
decision under the special issue.

 Standefer articulated a two-part test for determining whether a voir dire question seeks
an improper commitment: (1) Is the question a commitment question; and (2) Does the
question include only those facts that would lead to a challenge for cause? 59 S.W.3d at 182. 
A commitment question "commit[s] a prospective juror to resolve, or to refrain from
resolving, an issue a certain way after learning a particular fact." Id. at 179.

 By describing various hypotheticals, the State was simply illustrating the range of facts
that might give rise to a capital murder. No questions were asked of Warren in light of these
examples. She was not asked whether she would resolve or refrain from resolving the future
dangerousness issue after being informed of a particular set of facts. Rather, she was
informed that there were many fact scenarios that might give rise to a capital murder
conviction and was given two examples of the range of such facts. The examples were given
by way of explaining the law and the only question asked was whether she would be guided by
the evidence in answering the special issue. Because Warren was not asked to commit to any
particular set of facts, the State's question was not an improper attempt to bind her under
Standefer. Point of error eleven is overruled.

 The judgment of the trial court is affirmed.


Delivered: JUNE 30, 2004

UNPUBLISHED
1. As the State points out, submission to the jury of an instruction like that at issue in
this case has been dealt with by the various courts of appeals in other cases. Most of the courts
of appeals have viewed this instruction as not definitional and thus not violating Paulson. 
Jackson v. State, 105 S.W.3d 321, 325-26 (Tex. App.-Houston [14th Dist.] 2003, no pet.);
Hanks v. State, 104 S.W.3d 695, 701-02 (Tex. App.-El Paso 2003, no pet.); Fluellen v. State,
104 S.W.3d 152, 163-64 (Tex. App.-Texarkana 2003, no pet.); Minor v. State, 91 S.W.3d 824,
827-29 (Tex. App.-Fort Worth 2002, pet. ref'd); Carriere v. State, 84 S.W.3d 753, 758-60
(Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). Two of the courts of appeals have held such
an instruction to be erroneous in light of Paulson, but harmless in view of the facts of the
particular case. Rodriguez v. State, 96 S.W.3d 398, 399-405 (Tex. App.-Austin 2002, pet.
ref'd); Phillips v. State, 72 S.W.3d 719, 721 (Tex. App.-Waco 2002, no pet.). 
2. Miranda v. Arizona, 384 U.S. 436 (1966).
3. Campbell testified that appellant was referring to the sex-offender registration
logbook. 
4. Appellant's entry was preceded by entries reflecting sign-in times of 12:45, 11:30,
10:55, 10:40, and so on, all sequentially, back to 7:30 a.m.
5. Whether the communication is in fact privileged in Ohio is at least open to question,
because Ohio's marital communications privilege is narrower than its Texas counterpart -
containing a "coverture" requirement. See Ohio Rev. Code §2945.42. Given our disposition,
we do not address whether the statement in question was in fact privileged under Ohio law.