COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DENNIS EARL PICKENS,                                  )

                                                                              )              
No.  08-02-00164-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
195th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0153824-HN)

                                                                              )

 

 

O
P I N I O N

 

Appellant Dennis
Earl Pickens appeals his conviction for the offense of possession of a
controlled substance, to wit:  heroin, in
an amount by aggregate weight, including any adulterants or dilutants, of four
grams or more but less than 200 grams.  A
jury found Appellant guilty and assessed punishment at 25 years= imprisonment in the Texas Department
of Criminal Justice, Institutional Division.[1]  On appeal, Appellant asserts jury charge
error and argues that his trial counsel rendered ineffective assistance.  We affirm.

 








FACTUAL
SUMMARY

On June 19, 2001,
the Dallas Police Department received several citizen=s
complaints about illegal drug sales at a car wash in the 2400 block of Starks
in South Dallas.  Officers Thomas
Peterson and Scott Sayers were working on special assignment in the area and
were dispatched to investigate the drug complaints.  Officer Peterson conducted field surveillance
on foot some distance from the scene while his partner stayed in the patrol car
at another location.  Officer Peterson
concealed himself behind some cut tree limbs in the backyard of a nearby
residence and observed the activities at the car wash with a pair of
binoculars.

From the hidden
location, which was about fifteen to twenty yards away from the car wash,
Officer Peterson observed Appellant standing out in the parking lot, engaging
in what appeared to be a hand-to-hand drug transaction with personal property
exchanged for something Officer Peterson could not see.  The officer then saw Appellant walk over to a
vehicle, get into the driver=s
seat, and lean the seat back.  Appellant
was the only passenger in the vehicle and he kept the door of the vehicle
open.  An unknown individual then
approached the vehicle and handed Appellant money.  Officer Peterson observed Appellant lift up
the plastic cup holder console and remove a clear plastic baggie which
contained several capsules.  Appellant
shook a few of the capsules into the palm of his hand and the unknown
individual removed several capsules and left. 
In a period of ten to fifteen minutes, Officer Peterson observed two
other similar hand-to-hand transactions. 
Based on previous experience, Officer Peterson knew from the packaging
that such capsules typically contain powdered heroin and powdered cocaine.








After witnessing
what he believed to be a felony in progress, Officer Peterson radioed Officer
Sayers a description of Appellant and told him to get backup.  Officer Sayers later radioed and told Officer
Peterson that he was en route to detain Appellant until backup arrived.  Officer Peterson then observed Officer Sayers
approach Appellant and ask him to exit the vehicle.  Officer Sayers testified that when he
approached the vehicle, Appellant was sitting on the driver=s side with his legs hanging out of the
vehicle and the door open.  When
Appellant exited the vehicle, Officer Sayers frisked him for weapons.  Appellant was taken into custody and backup
officers at the scene conducted an inventory search of the vehicle prior to
having it towed to the city pound.

The officers
recovered from the vehicle a plastic bag with white and brown pills from
underneath the cup holder and discovered additional drugs in the glove
box.  The drugs tested positive for
cocaine and heroin.  The drug analysis
report showed the drugs recovered were controlled substances, which consisted
of 59 capsules of brown powder, containing heroin and weighing 9.9 grams, and
31 half-pink capsules, containing cocaine and weighing 2.2 grams.  Money inside an organizer, totaling $540, was
also seized from inside the vehicle.

Appellant
testified that in the morning on the day he was arrested, he called a wrecker
to pick up his car and take it to a mechanic=s
garage for wiring repair.  Appellant lead
the tow truck driver to the garage in another vehicle he had purchased the day
before.  After leaving the garage,
Appellant planned to take the vehicle he was driving back to the seller for
brake work.  Appellant arranged for an
acquaintance, Wayne Pratt, to follow him to the seller=s
business, so he could drop the vehicle off and not have to sit around and wait
for the repairs to be done.  Appellant
left with Mr. Pratt and another person named Charles Frazier.  Mr. Pratt was driving them around, making
stops on their way back to South Dallas. 
At the intersection of Starks and Bexar, Mr. Pratt pulled into a car
wash and Appellant got out of the vehicle to talk with a friend.








Appellant was
talking with his friend when Officers Peterson and Sayers pulled into the car
wash and parked by a dryer.  People
started running away.  The officers left
and went to another building down the street. 
Appellant continued talking with friends.  Officer Sayers then returned to the car wash
by himself.  Officer Sayers pointed at
Appellant, who was standing by a Suburban van, called him over and asked him
what he was doing.  The officer told
Appellant to stand at the back of the vehicle that Mr. Pratt had been driving.  Officer Sayers got into the car and started to
look around for a few seconds.  The
officer then exited and told Appellant to go stand at the front of the
vehicle.  Officer Sayers then handcuffed
Appellant and escorted him to the patrol car.

Appellant
testified that the vehicle the police searched that day was not his.  Appellant explained that his organizer was on
top of the vehicle.  The cash in his
organizer was money he earned by driving around a handicapped woman.  Appellant denied possessing the heroin and
cocaine.  The vehicle was registered to
someone named Pamela Jean Conley who lived at 4927 Bonnie View.  Appellant admitted that he lived at that
address prior to his incarceration, but did not know the individual listed as
the owner.  Appellant knew nothing about
the drugs found in the vehicle.

DISCUSSION

Jury
Charge Errors

In Issues One and
Two, Appellant complains that the trial court erred by including in its charge
an instruction regarding reasonable doubt (and erred by failing to include an
Article 38.23 instruction.  

 








Standard
of Review 

When reviewing
charge error, we utilize a two-step process. 
Orona v. State, 52 S.W.3d 242, 249 (Tex.App.--El Paso 2001, no
pet.).  We first determine whether error
actually exists in the charge.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985); Orona, 52 S.W.3d
at 249.  If error exists, we must then
determine whether sufficient harm was caused by the error to warrant
reversal.  Arline v. State, 721
S.W.2d 348, 351 (Tex.Crim.App. 1986).  If
the charge error was the subject of timely objection, reversal is required if
that error was calculated to injure the rights of the defendant thereby causing
Asome harm.@  Ovalle v. State, 13 S.W.3d 774, 786
(Tex.Crim.App. 2000).  If error exists,
we must then assess whether any resulting harm requires reversal.  Almanza, 686 S.W.2d at 171.  In a case where the defendant did not
properly object at trial, we will reverse only if the error is so egregious and
created such harm that he was denied a fair and impartial trial.  Arline, 721 S.W.2d at 351; Almanza,
686 S.W.2d at 171.  In both
circumstances, the harm suffered is examined in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole. 
Almanza, 686 S.W.2d at 171. 


Reasonable
Doubt Instruction

In Issue One, Appellant argues the
trial court erred in including a sentence regarding reasonable doubt in the
jury charge.  Appellant admits that he
did not object to the following instruction:

 

The prosecution has
the burden of proving the defendant guilty and it must do so by proving each
and every element of the offense charged beyond a reasonable doubt, and if it
fails to do so, you must acquit the defendant.








It is not required
that the prosecution prove guilt beyond all possible doubt; it is required that
the prosecution=s
proof excludes all >reasonable
doubt=
concerning the defendant=s
guilt.  [Emphasis added].

 

The court=s
charge in this case contained a portion of the reasonable doubt instruction
approved in Geesa v. State, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991), overruled
by Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000).  In Paulson, the Court disavowed the
requirement that the reasonable doubt standard be defined and instead,
determined that the better practice is to give no definition of reasonable
doubt in the jury charge.  Paulson,
28 S.W.3d at 573.  However, the Court
also determined that no reversible error would occur if both the State and
defense agreed to give the Geesa instruction to the jury.  Id. 

Appellant argues
that the instruction favored the State because it emphasized to the jury that
the State did not have to prove its case beyond all possible doubt and
constitutes egregious harm in that it is still a definition whose purpose was
to favor the State.  This Court recently
addressed the same complaint in Hanks v. State, 104 S.W.3d 695, 702
(Tex.App.--El Paso 2003, pet. granted). 
In Hanks, this Court held that the same challenged instruction
does not constitute a definition of reasonable doubt and therefore, does not
violate Paulson.  Hanks,
104 S.W.3d at 702; see also Minor v. State, 91 S.W.3d 824, 828-29
(Tex.App.--Forth Worth 2002, pet. ref=d)
(adopting the analysis followed by the First District Court of Appeals in the Carriere
case); Carriere v. State, 84 S.W.3d 753, 759 (Tex.App.--Houston [1st
Dist.] 2002, pet. ref=d).  As in Hanks, the charge here did not
give a reasonable doubt definition, therefore no error exists.  See Carriere, 84 S.W.3d at 759.  Issue One is overruled.

 








Article
38.23 Instruction

In his second
issue, Appellant asserts that the trial court erred in failing to instruct the
jury that it could disregard the evidence if it believed or had a reasonable
doubt about whether the officers illegally obtained the evidence pursuant to
Article 38.23 of the Texas Code of Criminal Procedure.  Tex.Code
Crim.Proc.Ann. art. 38.23 (Vernon Supp. 2004).  Appellant points to his testimony as evidence
that Officer Sayers without any justification, probable cause, or reasonable
suspicion, searched the vehicle.  In
reviewing the record, we find that Appellant failed to request an Article 38.23
instruction on the vehicle search at trial and therefore did not preserve error
on this issue.  Tex.R.App.P. 33.1; Kelly v. State, 669 S.W.2d 720, 726
(Tex.Crim.App. 1984)(failure to request the instruction waives error); Oberg
v. State, 890 S.W.2d 539, 544 (Tex.App.--El Paso 1994, pet. ref=d). 
Issue Two is overruled.

Ineffective
Assistance of Counsel

In Issue Three,
Appellant contends he was denied effective assistance of counsel because his
trial counsel failed to request an Article 38.23 instruction and failed to
object to the definition of reasonable doubt in the charge.








We review claims
of ineffective assistance under the two-pronged test set out by the United
States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in Hernandez v. State,
726 S.W.2d 53, 57 (Tex.Crim.App. 1986). 
To prevail, the defendant must show that trial counsel=s performance was deficient, that is,
counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808, 812
(Tex.Crim.App. 1999); Strickland, 466 U.S. at 687-88, 104 S.Ct. at
2064.  The defendant must also show that
counsel=s
deficient performance prejudiced his defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. 2064; Jackson v. State,
877 S.W.2d 768, 771 (Tex.Crim.App. 1994). 
This requires the defendant to show there is a reasonable probability
that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d  at 771. 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Strickland,
466 U.S. at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  It is the defendant=s
burden to prove ineffective assistance of counsel by a preponderance of the
evidence.  Thompson, 9 S.W.3d at
813.

In reviewing a
claim of ineffective assistance of counsel, we must indulge a strong
presumption that counsel=s
conduct falls within the wide range of reasonable professional assistance and
the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy.  Thompson,
9 S.W.3d at 813.  Any allegation of
ineffectiveness must be firmly founded and affirmatively demonstrated in the
record to overcome this presumption.  Id.;
see Jackson, 877 S.W.2d at 771. 
In the majority of instances, this task is extremely difficult because Athe record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.@ 
Thompson, 9 S.W.3d at 813-14. 
When faced with a silent record as to counsel=s
strategy, we will not speculate as to the reasons for counsel=s actions.  See Jackson, 877 S.W.2d at 771. 








In this case,
Appellant filed a motion for new trial, but did not challenge the alleged
ineffectiveness of his counsel.  The
record before this Court does not contain trial counsel=s
explanations of the reasons for the alleged errors, therefore it will be
difficult for Appellant to rebut the strong presumption that trial counsel=s conduct falls within the wide range
of reasonable professional assistance.  See
Thompson, 9 S.W.3d. at 814. 








Appellant asserts
that his trial counsel failed to request an Article 38.23 instruction, which
precluded the jury from giving effect to the illegality of the search.[2]  Specifically, Appellant points to evidence in
the record concerning the Appellant=s
first trial for the offense, which resulted in a hung jury because at least one
of the jurors questioned the legality of the search[3].  If the
instruction had been allowed, he asserts that he could have obtained another
hung jury if not an acquittal.  Appellant,
however, concedes that in the first trial, the trial court refused Appellant=s request for an Article 38.23
instruction, therefore we can only speculate as to whether this trial would
have reached the same outcome as the mistrial based on the alleged error.  The record before us provides no discernible
explanation for trial counsel=s
motivation in not requesting an Article 38.23. 
When faced with a silent record as to counsel=s
strategy, as we are in this case, we will not speculate as to the reasons for
counsel=s
actions.  See Jackson, 877 S.W.2d
at 771.  Appellant has failed to prove
ineffective assistance of counsel based on this contention.

Appellant also
asserts that his trial counsel was ineffective for failing to object to the
reasonable doubt language contained in the jury charge, which Appellant
asserted in Issue One was jury charge error. 
In addressing that issue, we concluded that the challenged portion of
the jury charge did not constitute a definition, therefore no error
existed.  It follows that Appellant has
failed to show ineffective assistance of counsel on that ground.  Issue Three is overruled.

Accordingly, we
affirm the trial court=s
judgment.

 

 

July
15, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In a consolidated trial, the jury convicted Appellant of possession of cocaine
in cause number F-0153823-HN and possession of heroin in cause number
F-0153824-HN.  Appellant has also
appealed his conviction in cause number F-0153823-HN.  We affirmed that conviction in an unpublished
opinion issued this same date.  Pickens
v. State, No. 08-02-00163-CR (Tex.App.--El Paso July 15, 2004, no pet.h.).





[2]
Article 38.23 provides:

 

(a)        No evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of the
State of Texas, or of the Constitution or laws of the United States of America,
shall be admitted in evidence against the accused on the trial of any criminal
case. 

 

In any case where the legal evidence
raises an issue hereunder, the jury shall be instructed that if it believes, or
has reasonable doubt, that the evidence was obtained in violation of the
provisions of this Article, then and in such event, the jury shall disregard any
such evidence so obtained. 

 

Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp. 2004).





[3]
In support of his contention, Appellant directs us to the State prosecutor=s comment during voir dire in this
trial, in which the prosecutor struck a prospective juror who was a security
guard because the juror who hung up the first jury trial was a security guard
that 

second-guessed the police
officers.